[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11147
_____

D.C. Docket No. 8:15-cr-00474-RAL-TBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERNEST VEREEN, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 5, 2019)

Before MARCUS, NEWSOM and ANDERSON, Circuit Judges.

MARCUS, Circuit Judge:

Ernest Vereen, Jr. appeals his conviction and sentence for possession of a

firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(e).

Vereen challenges the district court's decision not to give a jury instruction on

what Vereen terms the innocent transitory possession ("ITP") defense, through

which he sought to argue that his faultless and brief possession of a firearm did not constitute "possession" under § 922(g)(1). He adds that the failure of our Court to clarify whether the ITP defense is available in firearms offenses has created unconstitutional ambiguity. Vereen also raises three arguments foreclosed by our precedent -- that the government failed to establish that his prior aggravated battery convictions qualified as violent felonies under the Armed Career Criminal Act ("ACCA"); that his sentence violates the Fifth and Sixth Amendments because it was enhanced based on facts not charged in the indictment or proven to a jury beyond a reasonable doubt; and that § 922(g) is unconstitutional, facially and as applied to him. Finally, Vereen claims that his felony battery conviction does not qualify as a violent felony under the ACCA.

After careful review, we affirm.

## I.

Vereen was charged by a federal grand jury sitting in the Middle District of Florida in a single-count indictment with possession of a firearm by a convicted felon. The indictment listed several prior Florida felony convictions, including one for child abuse, two aggravated battery convictions, and a felony battery conviction.

The essential facts adduced at trial were these. Samuel South, a letter carrier for the United States Postal Service who delivered mail to a residential housing

2

complex in Tampa where Vereen lived, testified that on September 19, 2015, while delivering mail he noticed a gun in the mailbox of Apartment 43. Apparently startled by a firearm that was pointed outward, and concerned that the mailbox might be booby-trapped, South notified his supervisor and locked the mailbox door. Shortly thereafter, he met with two police officers and provided them with keys to open the mailbox.

Three police officers from the Tampa Police Department, Michael Hinson, Taylor Hart and Sergeant Eric Defelice, testified in turn about the events leading up to Vereen's arrest. All three said they had observed Vereen exit Apartment 43 and walk quickly to the mailbox while looking all around. After watching Vereen struggle with the lock, Officers Hinson and Defelice saw Vereen open the box. Defelice could see Vereen reach in and retrieve a firearm from the box, close the box and place the gun in his right back pocket. Vereen then began walking towards his apartment complex. Upon seeing a signal from another officer, Officers Hinson and Hart -- who were in plainclothes, but wearing tactical vests that said "police" across the chest -- emerged and took Vereen into custody. Officer Hinson identified himself as a police officer and ordered Vereen to put his hands in the air and get on the ground. According to Officers Hinson and Hart, Vereen did not immediately comply with the command, but rather hesitated. Hinson related that "[b]oth hands went into the air and his right hand went slowly

3

back to his right pocket." Eventually Vereen complied with the officer's command. Officer Hinson testified that he subsequently recovered a firearm from that pocket and a cellphone from Vereen's person.

Vereen testified on his own behalf. He described how, on the day in question, he left his condominium apartment to walk to the mailbox. He had to try several keys until finally he found the working key and the lock opened, revealing to his surprise, a firearm. He claimed he thought, "I'm in trouble. This is crazy. What can you do?," and removed the gun with the tips of his fingers and looked at it. He explained that when he walked back to the condo, he decided he did not want his children to see him with a gun in his hand, and so he placed the firearm in his back pocket. Vereen offered that his intention was to take the gun and report it to the police, but, as soon as he walked across the street, law enforcement officers came running at him. He said he immediately put his hands up and tried to tell them that he found the gun in his mailbox and was planning to report it. Although he had a cellphone on him at the time he discovered the firearm, he reasoned that he did not want to stand at the mailbox and call the police because when "[s]omebody was bold enough to put a gun in your mailbox, you ain't going to stand there and try to call no police. You are going to get someplace safe before someone come and try to shoot you." Vereen also testified that, when the police

4

approached him, he put his hands up and told them "look, this is what I found in my mailbox."

Vereen agreed that he was a convicted felon, that he took the firearm out of the mailbox and placed it in his back pocket, and that the firearm had crossed state lines. Vereen also conceded on cross-examination that initially he told law enforcement officers he had "received a mysterious call that there was a gun in [his] mailbox," but he couldn't identify the call in his cellphone records. He also admitted that initially he told the police "that somebody named Furquan Hubbard had set [him] up."

As part of its rebuttal, the government re-called Officer Hinson, who testified that, after Vereen's arrest, he participated in a search of Apartment 43, which was about 500 square feet in all and had one bedroom. Hinson detailed that officers had recovered from the bedroom closet a black shotgun, as well as men's and women's clothes. Hinson added that officers also recovered from the closet a box of ammunition matching the caliber of the firearm taken by Vereen from the mailbox.

During a charging conference, Vereen requested an "innocent transitory possession" instruction. The district court declined to give one, noting that Vereen could have locked the gun in the mailbox or used his cellphone to call the police. The jury found Vereen guilty.

5

Before sentencing, the probation office prepared a presentence investigation report ("PSI") using the 2016 United States Sentencing Guidelines Manual. The PSI assigned Vereen a base offense level of 24, pursuant to U.S.S.G. § 2K2.1(a)(2), because Vereen committed the instant offense after sustaining at least two felony convictions for crimes of violence. Vereen received a two-level increase under § 2K2.1(b)(4)(A) because the firearm was stolen, bringing his total offense level to 26. The probation officer further determined that Vereen qualified as an armed career criminal under the Armed Career Criminal Act, relying on several prior Florida felony convictions, including one for child abuse, two aggravated battery convictions, and a felony battery conviction. All of this yielded a total offense level of 33, which, when combined with a criminal history category of VI, resulted in an advisory guideline range of 235-293 months' imprisonment.

During the sentencing hearing, the district court overruled Vereen's objections to the PSI, concluding that, among other things, the PSI correctly scored the guidelines and that all four prior convictions qualified as ACCA predicates. The district court sentenced Vereen to 293 months' imprisonment, followed by five years' supervised release.

This timely appeal follows.

6

II.

First, Vereen argues that the district court abused its discretion in refusing his request for a jury instruction on the innocent transitory possession defense, although he acknowledges that our Court has never approved or foreclosed this defense. We review a district court's refusal to give a defendant's requested jury instruction for abuse of discretion. United States v. Hill, 799 F.3d 1318, 1320 (11th Cir. 2015). We examine whether a proposed instruction misstates the law or misleads the jury to the prejudice of the objecting party de novo. United States v. Chandler, 996 F.2d 1073, 1085 (11th Cir. 1993).[1]

In order for the denial of a requested instruction to constitute reversible error, a defendant must establish three things: that the request correctly stated the law; that the charge given did not substantially cover the proposed instruction; and, finally, that the denial substantially impaired the defendant's ability to present an effective defense. United States v. Palma, 511 F.3d 1311, 1315 (11th Cir. 2008).

---

[1] The government says that we should review Vereen's argument only for plain error because Vereen did not argue at the charging conference for an instruction on the ITP defense, but asked only for an instruction that he possessed the firearm "solely so he could call law enforcement." App'ee Br. at 8 (quoting Doc. 160 at 48); see United States v. Guerrero, 935 F.2d 189, 193 (11th Cir. 1991) (holding that the Court reviews unpreserved arguments for plain error only). Nevertheless, the government recognizes that Vereen filed a supplemental jury instruction before trial that sought the same ITP defense he describes on appeal. App'ee Br. at 8 (citing Doc. 29 at 3). Because the record reveals that Vereen argued extensively to the district court that he was entitled to a jury instruction on the innocent transitory possession defense, and the district court expressly noted that he had adequately preserved the issue, we reject the government's argument. The standard of review, however, has no effect on the disposition of this appeal, because Vereen's arguments fail under either test.

Although a district court has broad discretion in formulating its instructions, a defendant is entitled to an instruction relating to a theory of defense so long as there is some evidential foundation, even if the evidence was weak, inconsistent, or of doubtful credibility.  Id.  In making this determination, we take the evidence in a light most favorable to the accused.  Id.

Vereen claims that the district court should have instructed the jury about his "innocent" and "transitory" possession of a firearm.  We remain unpersuaded, however, having carefully considered the language of the statute and the way other courts have interpreted it.  Most critically, we can find nothing in the text to suggest the availability of an ITP defense to a § 922(g)(1) charge.  The statute does not invite any kind of inquiry into the purpose or the timespan of a defendant's possession of the firearm.  Allowing for this kind of defense would effectively cause us to rewrite the text of § 922(g) and the statutory scheme, so we have little difficulty concluding that innocent transitory possession is not available as a defense against § 922(g).

Starting with the plain language of the statute, there is no "innocent" or "transitory" exception.  The statute itself simply prohibits the possession of a firearm by a convicted felon.  It provides, in relevant part, that:

> It shall be unlawful for any person . . . who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to

8

receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).  By its own terms, § 922(g) does not contain a mens rea requirement, let alone the requirement that the defendant acted willfully or intentionally.  Instead, this Court has long held that the applicable mens rea is set out in § 924(a)(2), which, in turn, provides that "[w]hoever <u>knowingly</u> violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."  18 U.S.C. § 924(a)(2) (emphasis added).  We have read the two statutory provisions together to require <u>only</u> that a § 922(g) defendant "knowingly possessed" the firearm.  <u>United States v. Rehaif</u>, 888 F.3d 1138, 1143 (11th Cir. 2018); <u>United States v. Deleveaux</u>, 205 F.3d 1292, 1296–97 (11th Cir. 2000); <u>United States v. Billue</u>, 994 F.2d 1562, 1565 (11th Cir. 1993); <u>United States v. Winchester</u>, 916 F.2d 601, 604 (11th Cir. 1990).

Notably, § 924(a)(2) does not require that a violation of § 922(g)(1) be done "willfully" or "intentionally," in sharp contrast to other violations covered by § 924.  Indeed, § 924(a)(1)(D) is a catch-all provision that specifies a "willful" mens rea for certain remaining violations of the chapter: "Whoever . . . <u>willfully</u> violates any other provision of this chapter . . . ."  18 U.S.C. § 924(a) (emphasis added); <u>see also</u> <u>United States v. Sherbondy</u>, 865 F.2d 996, 1001 (9th Cir. 1988) (Congress "added a set of mens rea requirements by amending section 924(a)(1) to punish certain violations only if they are committed 'willfully' and others only if

9

they are committed 'knowingly.'").  As we've said many times, when "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely" in its exclusion.  United States v. Alabama, 778 F.3d 926, 933 (11th Cir. 2015); see also United States v. Green, 904 F.2d 654, 655 (11th Cir. 1990) (applying this general rule to another portion of § 924 and reasoning that "[t]he fact that the former 'Dangerous Special Offender' statute, 18 U.S.C. § 3575(d) provided a time limit for the felonies underlying an enhancement suggests that Congress knew what it was doing when it omitted such a limit from section 924(e)(1)"); Antonin Scalia & Bryan A. Garner, Reading Law 107 (2012) ("The expression of one thing implies the exclusion of others (expression unius est exclusion alterius).").  It is abundantly clear that Congress deliberately chose which violations of § 922 would require knowing conduct and which would include the element of willfulness too.

The mens rea associated with "knowing" conduct, the Supreme Court has explained, "[i]n a general sense . . . corresponds loosely with the concept of general intent."  United States v. Bailey, 444 U.S. 394, 405 (1980); H.R. Rep. 495, 99th Cong., 2d Sess. (1986), reprinted in 1986 U.S.C.C.A.N. 1327, 1351–52 ("It is the Committee's intent, that unless otherwise specified, the knowing state of mind shall apply to circumstances and results.  This comports with the usual

10

interpretations of the general intent requirements of current law.").  More specifically, a "knowing" mens rea "merely requires proof of knowledge of the facts that constitute the offense."  Bryan v. United States, 524 U.S. 184, 193 (1998); see also United States v. Phillips, 19 F.3d 1565, 1576–77 (11th Cir. 1994), amended, 59 F.3d 1095 (11th Cir. 1995) ("[A] defendant need not intend to violate the law to commit a general intent crime, but he must actually intend to do the act that the law proscribes.").  Willfulness, on the other hand, typically requires that "the defendant acted with knowledge that his conduct was unlawful," Ratzlaf v. United States, 510 U.S. 135, 137 (1994), and that the defendant acted with "a 'bad purpose'" and a "culpable state of mind."  Bryan, 524 U.S. at 191 (quotation omitted); Dixon v. United States, 548 U.S. 1, 5 (2006); see also Phillips, 19 F.3d at 1577 (defining "willfully" as meaning "that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is with bad purpose either to disobey or disregard the law") (quotation omitted).

Because, as we see it, § 922(g)(1)'s felon-in-possession-of-a-firearm offense only requires that the possession be knowing, it is a general intent crime.  See Palma, 511 F.3d at 1315.  This means that a defendant need not have specifically intended to violate the law and that the defendant's motive or purpose behind his possession is irrelevant.  See id.; United States v. Sistrunk, 622 F.3d 1328, 1332 (11th Cir. 2010); see also United States v. Reynolds, 215 F.3d 1210, 1214 (11th

11

Cir. 2000) (rejecting Reynolds' Eighth Amendment claim because even if his recent possession of the firearm was for an innocent reason, § 922(g) does not "focus on the motive or purpose of the current possession of firearms, but rather on the fact that a person with three or more violent felony or serious drug convictions currently possesses a firearm").  It also means that by prohibiting only knowing possession, "the statute does not invite inquiry into the reason the defendant possessed the [firearm], as long as the defendant knew it was [a firearm] he possessed."  United States v. Baker, 508 F.3d 1321, 1325 (10th Cir. 2007); United States v. Johnson, 459 F.3d 990, 996 (9th Cir. 2006).  Indeed, by omitting the element of willfulness from § 922(g)(1), Congress necessarily foreclosed the availability of the innocent transitory possession defense.  Without willfulness, any defense that the defendant possessed the firearm for a good or innocent purpose becomes irrelevant.  See United States v. Gilbert, 430 F.3d 215, 219 (4th Cir. 2005) (holding that if Congress had intended for a defendant to offer an ITP defense, "it would have required a willful violation of the statute, rather than merely a knowing one," yet it "deliberately decided to do otherwise").  Nor does the statute permit any inquiry into how long the defendant's possession lasted.  "The statute explicitly punishes 'possess[ion],' not retention, and thus 'in no way invites investigation into why the defendant possessed a firearm or how long that possession lasted.'"  Johnson, 459 F.3d at 996 (quoting Gilbert, 430 F.3d at 218).

Not only is an innocent transitory possession defense incompatible with the text, it would also be extremely difficult to administer.  In this kind of case, only the defendant "truly knows of the nature and extent of his gun possession." Id. at 997.  As the Ninth Circuit has said, "[w]e will not require the government to contest motive in every § 922 case where the facts will bear an uncorroborated assertion by the defendant that he innocently came upon a firearm and was preparing to turn it over to the authorities when, alas, he was arrested." Id.  This is especially true since Congress promulgated the statute to keep guns out of the hands of convicted felons and offered no exception to this general prohibition. Id. at 998.  "The statute is precautionary; society deems the risk posed by felon-firearm possession too great even to entertain the possibility that some felons may innocently and temporarily possess such a weapon." Id.

In short, under the statute and the developed case law, the purpose behind a defendant's possession is irrelevant, which means that he cannot defend against the crime based on the "innocent" or "transitory" nature of his possession.  We now join the overwhelming majority of our sister circuits that have declined to recognize the theory of "temporary innocent possession."[2] Baker, 508 F.3d at

---

[2] In Palma, the only published case we have that addressed the issue at all, we declined to decide the availability of the defense to a § 922(g) charge, concluding that even if the defense were available, it was not supported by the evidence.  511 F.3d at 1316.  There, the government had presented uncontroverted evidence that Palma had entered a gun shop and shooting range on two occasions; he physically picked up a firearm; he repeatedly referred to the firearm as "my gun";

13

1325 (10th Cir.) (rejecting the ITP defense because § 922(g) prohibits "knowing, as opposed to willful, possession of ammunition"); Johnson, 459 F.3d at 997–98 (9th Cir.) (holding that the ITP defense would undermine the statutory design of § 922(g)); United States v. Teemer, 394 F.3d 59, 62–65 (1st Cir. 2005) (rejecting the ITP defense and affirming district court's refusal to give jury instruction on "fleeting" or "transitory" possession); United States v. Mercado, 412 F.3d 243, 250–52 (1st Cir. 2005) (rejecting the ITP defense and holding that even momentary or fleeting possession of a firearm is sufficient under the statute); Gilbert, 430 F.3d at 218 (4th Cir.) (rejecting the proposal of an exception to § 922(g)(1) when the defendant had no illicit motive and attempted to quickly rid himself of the firearm); United States v. Hendricks, 319 F.3d 993, 1007 (7th Cir. 2003) (holding that only justification defenses would be recognized); see also United States v. Adkins, 196 F.3d 1112, 1115 (10th Cir. 1999), overruled on other grounds by Chambers v. United States, 555 U.S. 122 (2009) (rejecting claim that knowledgeable and unjustified possession for "a mere second or two" falls outside § 922(g)); United States v. Rutledge, 33 F.3d 671, 673 (6th Cir. 1994) (rejecting claim that

---

and he requested, purchased, and carried away ammunition for the firearm.  Id.  The only reason his possession had been short or transitory was because he was arrested upon exiting the store, and Palma had presented no affirmative evidence that he attempted to rid himself of the ammunition.  Id.  We held that on this evidential foundation, the district court did not abuse its discretion in declining to give the instruction.  Id. at 1317.

14

possession of a firearm "for innocent purposes" was "a legitimate defense" to § 922(g)).

As far as we can tell, the D.C. Circuit is the only appellate court -- out of at least half a dozen -- to have held otherwise.  See United States v. Mason, 233 F.3d 619, 624–25 (D.C. Cir. 2000) (defining and applying the transitory innocent possession defense).  In Mason, the defendant had found a gun in a paper bag near a school while he was working as a delivery truck driver, and said he took possession of the firearm only to keep it out of the reach of young children at the school, fully intending to give the weapon to a police officer whom he expected to see later that day on his truck delivery route.  Id. at 620.  The D.C. Circuit narrowly defined the limits of the defense to situations where the firearm was obtained by innocent means and for no illicit purpose and where the possession was transitory.  Id. at 624.

We respectfully disagree.  As we see it, the text of the statute answers the precise question presented by the facts of our case: willfulness has been omitted from § 922(g)(1) and we are not free to rewrite the statute and include it.  Our position is consonant with the Supreme Court's interpretation of the statute's purpose: "Congress sought to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society."  Small v. United States, 544 U.S. 385, 393 (2005) (quotation

15

omitted). Beyond that, the facts of <u>Mason</u> are peculiar, involving a firearm found in the open near a schoolyard where young children roam freely and could have discovered it. It's possible that, under the facts in <u>Mason</u>, the defense of necessity or justification would have been available to the defendant. <u>See</u> <u>Deleveaux</u>, 205 F.3d at 1295 (exploring the possibility of a defense to § 922(g) that would require the government to prove beyond a reasonable doubt that the defendant did not act under duress or by necessity in possessing the firearm). In any event, we're bound by the unambiguous language contained in § 922(g)(1), and this leaves no room for an innocent or transitory exception, however narrowly the D.C. Circuit may have drawn it.

Moreover, as we see it, this reading of the statute -- one compelled by its unambiguous text -- in no way yields a result that is either unwavering or absurd. We've expressly held that if, for example, a felon truly did not "know" that what he possessed was a firearm, then § 922(g) could not impose criminal liability. To satisfy the "knowing" requirement of § 922(g)(1), the government must prove that the defendant had actual or constructive possession of a firearm. <u>See</u> <u>United States v. Wright</u>, 392 F.3d 1269, 1273 (11th Cir. 2004). "To prove actual possession the evidence must show that the defendant either had physical possession of or personal dominion over the [firearm]." <u>United States v. Leonard</u>, 138 F.3d 906, 909 (11th Cir. 1998); <u>see also</u> <u>United States v. Oscar</u>, 877 F.3d 1270, 1280 (11th

16

Cir. 2017) (noting that the government must also show that the defendant "'knowingly' possess[ed] the firearm" to establish actual possession). "To establish constructive possession, the government must show that the defendant exercised ownership, dominion, or control over the firearm or the [premises] concealing the firearm." United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir. 2004). Constructive possession can also be established by showing that the defendant had "the power and intention to exercise dominion or control." Id. at 1235; United States v. Derose, 74 F.3d 1177, 1185 (11th Cir. 1996) ("Constructive possession exists when a person 'has knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession even though he does not have actual possession.'"). Thus, whether possession is actual or constructive, a defendant must have known that what he possessed was a firearm in order to establish guilt under § 922(g)(1).

Furthermore, this Court, like many others, has recognized that a necessity or justification defense may be available in § 922(g)(1) cases. See Deleveaux, 205 F.3d at 1297–98 (agreeing with our sister circuits that "the defense of justification may be available to a § 922(g)(1) charge" and listing cases). We reached this conclusion upon the observation that Congress legislated against the backdrop of the common law, which has historically recognized a necessity defense. See id. at 1297 (citing Bailey, 444 U.S. at 415 n.11 ("Congress in enacting criminal statutes

17

legislates against the background of Anglo–Saxon common law . . . .")).  We also stressed that we would allow this defense only in extraordinary circumstances.  See id.  As a result, a defendant must show four elements to establish a necessity defense to a § 922(g)(1) charge:

> (1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

See id. (citing United States v. Wofford, 122 F.3d 787, 789–90 (9th Cir. 1997); United States v. Paolello, 951 F.2d 537, 540 (3d Cir. 1991); United States v. Singleton, 902 F.2d 471, 472 (6th Cir. 1990); and United States v. Gant, 691 F.2d 1159, 1162–63 (5th Cir. 1982)); see also Pattern Jury Instructions, Criminal Cases, Eleventh Circuit, Special Instruction Number 16, entitled "Duress and Coercion (Justification or Necessity)."  We've emphasized that "[t]he first prong requires nothing less than an immediate emergency."  United States v. Rice, 214 F.3d 1295, 1297 (11th Cir. 2000).

So, to the extent Vereen could have claimed a true emergency -- say, if his children had found the gun in the mailbox -- the defense of necessity arguably would have been available.  But that is not what he asked for and that is not what the facts established.  Rather, Vereen explicitly declined to seek an instruction of

18

necessity,[3] and instead sought something different -- a defense that we've never recognized, a defense that is contrary to the text, and a defense that would impractically force the courts to delve into the purpose behind the possession of a firearm.  While the Supreme Court has recognized common-law defenses to federal criminal firearm statutes, the Supreme Court has done so with common-law defenses that have been "long-established" and that Congress would have been familiar with.  See, e.g., Dixon, 548 U.S. at 13–14 (discussing the defense of duress).  Vereen has given us no reason to think that the innocent transitory possession defense was long-established or that Congress would have been familiar with it.

In short, the district court did not abuse its considerable discretion in declining to give the requested instruction.  We add, however, that even if the innocent transitory possession defense was somehow available in this Circuit (and it is not) the district court would not have abused its discretion in declining to give the instruction in this case.  It is plain from this record that Vereen did not rid himself of possession of the firearm as promptly as reasonably possible.  Vereen testified that he had a cellphone on his person at the time that he saw the gun in the

---

[3] In relevant part, defense counsel told the district court: "Judge, first of all, I want to make it clear, if I didn't before, I am not asking for a justification affirmative defense.  I'm not. . . . This is very clearly to me not a justification affirmative defense case.  There is no evidence to support the four prongs of that."

mailbox.  He could have left the gun in the mailbox and called the police to immediately report the firearm.  Indeed, he could have waited by the mailbox for the police to arrive, without ever touching the gun.  And if he was somehow reluctant to call the police in a public place while he stood at the box, Vereen could have locked the gun back in the mailbox and returned to his apartment to make the call.  While he testified that he did not know how many keys to the mailbox there were, he thought his family had one or two.  Normally his girlfriend had the key; he had one that day.  It was altogether unclear from his testimony how his sons would have gained access to the mailbox; he did not testify that they had keys.  Regardless, if he was concerned that his children might have a key to the mailbox and might attempt to check the mailbox, after discovering the firearm he could have kept his children away from the box or requested guidance from police.

Finally, we cannot forget that Vereen's possession of the firearm was short not because he attempted to get rid of the weapon, but only because he was arrested so soon (seconds) after placing the gun in his back pocket.  See Palma, 511 F.3d at 1316.  Nor can we ignore that police found during a search of his apartment a black shotgun, as well as a box of ammunition matching the caliber of the firearm Vereen took from the mailbox.  The district court did not abuse its discretion in declining to give an ITP instruction.

20

III.

We also reject Vereen's claim, made for the first time on appeal, that the term "unlawful possession" under § 922(g)(1) is unconstitutionally vague because we have never before determined whether there is an ITP defense to the charge. Objections not raised in the district court are reviewed only for plain error. United States v. Moriarty, 429 F.3d 1012, 1018 (11th Cir. 2005). To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights. Id. at 1019. If all three conditions are met, we may exercise our discretion to recognize a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. When neither this Court nor the Supreme Court have resolved an issue, there can be no plain error in regard to that issue. Id.

As an initial matter, plain error is the appropriate standard of review against which to measure this claim. The record reveals that Vereen argued before the district court that he was entitled to an ITP jury instruction, not that the term unlawful possession was unconstitutionally vague because we had never addressed the ITP defense. Vereen cannot show plain error. He has pointed to no precedent, and independent research has revealed none, from this Court or the Supreme Court holding that a court's failure to affirmatively determine whether a defense is

21

available for a crime renders the underlying criminal statute unconstitutionally vague.  See id. at 1019.

## IV.

We are also unconvinced by Vereen's claim that the government failed to establish that his prior Florida convictions qualified as violent felonies under the Armed Career Criminal Act.  We review de novo whether an offense qualifies as a violent felony under the ACCA.  United States v. Lockett, 810 F.3d 1262, 1266 (11th Cir. 2016).

Under the statute, a person who violates § 922(g) and has three previous convictions for either violent felonies or serious drug offenses shall be imprisoned not less than 15 years.  18 U.S.C. § 924(e)(1).  The ACCA defines a "violent felony" as any of several enumerated crimes, or any crime punishable by a term of imprisonment exceeding one year that has as an element the use, attempted use, or threatened use of physical force against the person of another.[4]  Id. § 924(e)(2)(B).

---

[4] The statute reads:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

In determining whether a prior conviction qualifies as a violent felony under the ACCA, sentencing courts look at the elements of the crime, not the underlying facts of the conduct that led to the conviction. United States v. Braun, 801 F.3d 1301, 1304 (11th Cir. 2015). In other words, all that matters are "the elements of the statute of conviction." Taylor v. United States, 495 U.S. 575, 601 (1990). When a statute "comprises multiple, alternative versions of a crime" -- that is, when a statute is "divisible" -- the court "must determine which version of the crime the defendant was convicted of," then determine whether that specific offense qualifies as an ACCA predicate. Braun, 801 F.3d at 1304 (quoting Descamps v. United States, 570 U.S. 254, 262 (2013)). A statute is divisible if it sets out one or more elements of the offense in the alternative, thereby defining multiple crimes, and indivisible if it contains a single set of elements. Descamps, 570 U.S. at 262–64. If the statute is divisible, then the sentencing court may consult a limited class of documents to determine which alternative element formed the basis of the prior conviction. Id. at 257–58. That class of documents, known as "Shepard" documents, includes: the terms of the charging document, the terms of a plea agreement or transcript of the colloquy between the judge and the defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record. Shepard v. United States, 544 U.S. 13, 26 (2005). Guilty pleas may establish ACCA predicate offenses. Id. at 19.

23

Vereen argues that his two prior aggravated battery offenses do not constitute violent felonies under the ACCA.  Florida law, at the time of Vereen's two convictions, defined aggravated battery this way:

> (1)(a) A person commits aggravated battery who, in committing battery:
>
>> 1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or
>>
>> 2. Uses a deadly weapon.
>
> (b) A person commits aggravated battery if the person who was the victim of the battery was pregnant at the time of the offense and the offender knew or should have known that the victim was pregnant.

Fla. Stat. § 784.045.  We've held that a Florida aggravated battery conviction qualifies as a violent felony under the elements clause under either of the first two alternatives in § 784.045.  Turner v. Warden Coleman FCI (Medium), 709 F.3d 1328, 1341 (11th Cir. 2013), abrogated on other grounds by Hill, 799 F.3d at 1321 n.1.[5]  Based on Vereen's Shepherd documents, his 2000 aggravated battery

---

[5] In Hill, a panel of this Court noted that it was no longer bound by the determination in Turner that battery on a law enforcement officer was a violent felony under the residual clause after Johnson v. United States, 135 S. Ct. 2551 (2015).  Hill, 799 F.3d at 1321 n.1.  However, Johnson did not undermine the portion of Turner that relied on the elements clause to determine that aggravated battery can qualify as a violent felony.  See Johnson, 135 S. Ct. at 2563 ("Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony.").  We have repeatedly cited the portions of Turner that were unaffected by Johnson as good law after Hill.  See, e.g., Hylor v. United States, 896 F.3d 1219, 1223 (11th Cir. 2018); United States v. Deshazior, 882 F.3d 1352, 1355 (11th Cir. 2018); United States v. Golden, 854 F.3d 1256, 1256–57 (11th Cir. 2017) (per curiam) (holding that the argument that a Florida conviction for aggravated assault is not a crime of violence was "foreclosed by our precedent" in Turner).

judgment stated that he pled guilty to violating Florida Statutes § 784.045, aggravated battery "(GBH/deadly weapon)," and the charging information alleged that he intentionally caused great bodily harm, permanent disability, or permanent disfigurement using a deadly weapon. Similarly, the 2011 aggravated battery judgment indicated that Vereen pled guilty to aggravated battery causing great bodily harm, in violation of Florida Statutes § 784.045(1)(A)(1), and the information charged that he intentionally caused great bodily harm, permanent disability, or permanent disfigurement. Thus, the charging documents from both convictions indicate that he was convicted of violating subsection (a) of the aggravated battery statute, and we are bound by our holding in Turner that Florida aggravated battery qualifies as an ACCA predicate. See United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir. 2009) ("We may disregard the holding of a prior opinion only where that holding is overruled by the Court sitting en banc or by the Supreme Court.").[6]

---

[6] We've also rejected Vereen's claim that injuries requiring medical attention are necessary to establish the requisite level of force for purposes of the ACCA. See United States v. Vail-Bailon, 868 F.3d 1293, 1299–1302 (11th Cir. 2017) (en banc). As we reiterated in Vail-Bailon, the proper standard is force "capable" of causing physical pain or injury. Id. at 1300–01. And as for his argument that the government failed to provide sufficient proof that he assented to the underlying facts of the offenses, Vereen is mistaken. Unlike a nolo contendere plea without an admission of guilt, see United States v. Diaz-Calderone, 716 F.3d 1345 (11th Cir. 2013), Vereen's aggravated battery judgments indicate that he pled guilty, and a guilty plea is sufficient to establish an ACCA predicate conviction. See Shepard, 544 U.S. at 19.

25

Vereen also says his 2012 felony battery conviction does not constitute an ACCA predicate.  The Florida battery statute provided, at the relevant time, that:

(1) (a) The offense of battery occurs when a person:

   1.  Actually and intentionally touches or strikes another person against the will of the other; or

   2.  Intentionally causes bodily harm to another person.

(b) Except as provided in subsection (2), a person who commits battery commits a misdemeanor of the first degree . . .

(2) A person who has one prior conviction for battery, aggravated battery, or felony battery and who commits any second or subsequent battery commits a felony of the third degree[.]

Fla. Stat. § 784.03.  Because Vereen was convicted under § 784.03(2), we analyze that subsection, which requires that Vereen committed a battery subsequently to a conviction for battery, aggravated battery, or felony battery.  Curtis Johnson v. United States, 559 U.S. 133, 136 (2010).  Battery, in turn, is defined in § 784.03(1), which is divisible into at least two elements: (1) to intentionally cause bodily harm; or (2) actually and intentionally touch or strike the victim.  Id. at 136–37.  Florida courts interpreting § 784.03(1)(a) have treated these two divisible subsections ((1) and (2)) as alternative elements of the crime of battery.  See, e.g., Jaimes v. State, 51 So. 3d 445, 449–51 (Fla. 2010); State v. Weaver, 957 So. 2d 586, 587–89 (Fla. 2007); Fla. Std. Jury Instr. (Crim.) 8.3.

26

The district court was permitted, as it did, to look to Shepard documents to determine which of the alternative elements of the divisible statute Vereen was convicted of violating. See Descamps, 570 U.S. at 260–61, 263. In providing the factual basis during the plea colloquy for the § 784.03(2) charge, the prosecutor detailed that Vereen had falsely imprisoned a woman he was in a domestic relationship with for nine to ten hours, during which time he "repeatedly hit and struck" her. The prosecutor added that the police had "observed injuries on [the victim] consistent with the batteries that had been reported." Reviewing these and other Shepard documents, we are satisfied that Vereen was convicted of a form of Florida battery that is a violent felony -- the bodily harm prong. See Diaz-Calderone, 716 F.3d at 1350–51 (where charging instrument alleged that defendant did "touch or strike [or] cause bodily harm," district court properly relied on factual basis and plea colloquy to determine whether he had pleaded to violent element).

We address the "bodily harm" prong of § 784.03 even though the government did not fully flesh out the argument before the district court,[7] because

---

[7] The government originally argued at Vereen's sentencing that his Florida felony battery crime qualified as a violent felony because the "touch or strike" prong of the Florida battery statute was divisible, and Vereen had struck the victim, committing a violent felony. In so doing, it relied on our opinion in United States v. Green, 842 F.3d 1299, 1324 (11th Cir. 2016), opinion vacated and superseded on denial of reh'g, 873 F.3d 846 (11th Cir. Sept. 29, 2017), which had held that the touch or strike prong of the Florida statute was itself divisible, and that a conviction under the strike prong of § 784.03 qualified as a violent felony under the elements clause. Since Vereen's

a change in our case law occurred <u>after</u> the appeals briefs were completed in this case, so neither Vereen nor the government initially had the opportunity to focus on the bodily harm prong in district court.  However, since the change in law, both parties have filed two sets of supplemental authority raising the issue in this Court, and we've had oral argument addressing the issue.  Moreover, the record makes it clear that the United States relied on both the striking <u>and</u> bodily harm prongs at sentencing, and that all of the necessary facts were before the district court:  The government informed the district court that Vereen's <u>Shepard</u> documents established his guilty plea to having "repeatedly hit and struck" his victim, leaving visible "injuries"; Vereen didn't dispute that the plea colloquy stated facts that would make it a violent predicate; and Vereen only challenged whether his assent by the entry of a guilty plea was sufficient to make the plea colloquy reliable, an objection the district court overruled.

We turn, then, to the application of these facts to the question before us, recognizing that "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force -- that is, force capable of causing physical pain or injury to another person."  <u>Curtis Johnson</u>, 559 U.S. at 140

---

sentencing, however, the first <u>Green</u> opinion was vacated and superseded by a new opinion, which did not reach the issue of whether the strike prong of § 784.03 qualified as an independent violent felony.  <u>Green</u>, 873 F.3d at 868–69.  Because <u>Green</u> was vacated, the government now argues on appeal that Vereen's <u>Shepard</u> documents establish that he was convicted under the "bodily harm" prong of § 784.03, which still qualifies as a violent felony under the ACCA.

(emphasis omitted).  In United States v. Vail-Bailon, 868 F.3d 1293 (11th Cir. 2017) (en banc), we held that the test in Curtis Johnson for "determining whether an offense calls for the use of physical force . . . is whether the statute calls for violent force that is capable of causing physical pain or injury to another."  Id. at 1302.  Using this test, we hold that Vereen's conviction under Florida's battery statute, requiring a use of force that "intentionally cause[s] bodily harm," qualifies as a violent felony under the elements clause, because force that in fact causes this level of harm "necessarily constitutes force that is capable of causing pain or injury."  Id. at 1303; see also id. at 1304 (holding that Florida's other felony-battery statute, Fla. Stat. § 784.041, "which includes the additional element that the touch or strike in fact cause significant physical injury, necessarily requires the use of force capable of causing pain or injury and therefore does" qualify as an ACCA predicate).  As a result, Vereen's prior conviction for felony battery under Florida Statutes § 784.03 qualified as a valid ACCA predicate offense.[8]

---

[8] In reaching this conclusion, we emphasize that Vereen conceded in district court that the facts stated in the relevant plea colloquy would make this conviction a violent predicate, that all of the relevant Shepard documents concerning whether viewing Vereen's crime through the "bodily harm" prong would satisfy the ACCA were before the district court, and that the resolution of the matter is clear.  Thus, even though the district court did not address this exact issue, we can affirm on this ground.  See Ovalles v. United States, 905 F.3d 1231, 1252 (11th Cir. 2018) (establishing a new test to determine whether a defendant's prior conviction qualifies as a "crime of violence" under 18 U.S.C. § 924(c), which uses a "conduct-based approach" that relies on the actual facts and circumstances underlying a defendant's offense, and applying that test in the first instance to admitted, "real-life" facts "embodied in a written plea agreement and detailed colloquy"); United States v. Chitwood, 676 F.3d 971, 976 (11th Cir. 2012) ("Because we can affirm for any reason supported by the record, '[e]ven though the district court did not reach the

With two prior convictions for Florida aggravated battery, and one prior

conviction for Florida felony battery, Vereen had the requisite ACCA predicate

offenses to qualify as a career offender.  Because this satisfies the required number

of predicate offenses, we need not reach the issue of whether child abuse qualifies.

## V.

Vereen also claims that his Fifth and Sixth Amendment rights were violated

because his sentence was increased based on the Armed Career Criminal Act

without these requirements being charged in the indictment and proven to the

satisfaction of a jury beyond a reasonable doubt.  Vereen concedes, however, that

this argument is barred by binding precedent.  In Apprendi v. New Jersey, 530 U.S.

---

residual clause issue, we can still decide it.'"); United States v. Taylor, 88 F.3d 938, 944 (11th Cir. 1996) ("Although the district court did not make individualized findings regarding the obstruction of justice enhancement, the record clearly reflects the basis for the enhancement and supports it; a remand is not necessary."); United States v. Jones, 52 F.3d 924, 927 (11th Cir. 1995) ("No remand is necessary in this case, however, because Jones is represented in this appeal by conflict-free counsel, and the record is sufficient for us to determine that Jones's selective prosecution defense is clearly without merit.  No additional facts need be developed, and any district court decision of the issue would be reviewed de novo by this Court anyway."); see also Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331–32 (11th Cir. 2004) (holding that issues raised for the first time on appeal are generally forfeited, unless: (1) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (2) the party had no opportunity to raise the issue below; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; or (5) the issue presents significant questions of general impact or of great public concern).  This situation is nothing like the one in, for example, United States v. Petite, 703 F.3d 1290, (11th Cir. 2013), where we held that the government could not offer on appeal a new predicate conviction in support of an ACCA enhancement.  Id. at 1292 n.2.  Not only is the language in Petite dicta, but the defendant in Petite had objected at sentencing and on direct appeal that the vehicle flight offense did not count substantively under the residual clause, which means that the government had the opportunity to raise an alternate ground for affirmance but nevertheless chose not to.  See id. at 1292.  Here, the government had no opportunity to do so.

466 (2000), the Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt, but it excepted the fact of a prior conviction from this rule.  Id. at 490.  Thus, Vereen's claims fail.

Finally, Vereen argues that § 922(g) is unconstitutional, facially and as applied, because it exceeds Congress's constitutional power under the Commerce Clause.  Once again, Vereen concedes that this argument is barred by binding precedent.  In United States v. Scott, 263 F.3d 1270 (11th Cir. 2001), we held that United States v. Lopez, 514 U.S. 549 (1995), and United States v. Morrison, 529 U.S. 598 (2000), did not alter our previous holding that § 922(g) is constitutional.  See Scott, 263 F.3d at 1271–74; Kaley, 579 F.3d at 1255.  Accordingly, this claim fails too.

**AFFIRMED**.

31