[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13316
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cr-60032-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PIERRE ELIEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 24, 2019)

Before MARTIN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Pierre Elien appeals his jury conviction for unlawful possession of a firearm

and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  Elien

argues the evidence introduced at trial was insufficient to establish he possessed firearms. He also argues the district court abused its discretion by allowing the government to admit into evidence a recording and the translated transcript of a jail call in which he discussed his ownership of the car where the firearms were found. After careful review, we affirm.

## I.

In February 2018, a grand jury charged Elien with one count of knowingly possessing a firearm and ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Elien stipulated that he was a convicted felon and that the firearms and ammunition he was accused of possessing travelled in interstate commerce. He then proceeded to trial by jury.

During trial, the government introduced evidence that, in 2016, Homeland Security Investigation agents began investigating Elien for participating in a possible cocaine smuggling operation. As part of the investigation, agents surveilled Elien's apartment building in Pompano Beach, Florida. During their surveillance, agents saw Elien driving a silver Mercedes G-Wagon. In particular, an agent recorded in a report that he saw Elien driving the Mercedes on April 11, 2017. Agents also observed that either the Mercedes or a red Toyota Corolla was frequently parked in a space assigned to Elien's apartment.

2

In the course of their investigation, agents discovered Elien may have violated immigration laws.  On February 7, 2018, federal agents and officers from the Broward Sheriff's Office went to Elien's apartment building to arrest him for the suspected immigration violation.  After they saw Elien walk out of the apartment building and enter the Toyota Corolla, agents stopped him, instructed him to get out of the car, and placed him under arrest.

At the time of the arrest, agents saw the silver Mercedes in the parking lot of Elien's apartment building.  After Elien was arrested, a Broward officer walked her canine partner around the Mercedes.  The dog alerted, indicating to the officer that the car should be searched further.  Elien's wife or girlfriend[1] spoke with law enforcement officers and supplied the keys for the Mercedes.  Using those keys, officers unlocked the car then deployed the dog inside the vehicle.  The dog again alerted, this time signaling the need to search the floorboard behind the vehicle's center console.

In the area where the dog alerted, officers discovered an "aftermarket hump" secured to the car's floorboard with two screws.  Officers removed the screws and pulled out a "little cubby" containing three firearms and a box of bullets.  The three firearms recovered from the cubby were a Ruger handgun, a Colt handgun, and a

---

[1] The record refers to this person both as Elien's wife and as his girlfriend.  To simplify this opinion, we will refer to her as his wife.

3

Glock 19 handgun.  In the car, separate from the cubby, officers found a number of items associated with Elien.  There was a current Florida registration for the car listing Elien as its owner; proof of insurance for the car identifying Elien as the insured; a W-2 tax document listing earnings for Elien; medications prescribed to Elien; and receipts cataloging money sent by Elien.

While some officers were searching the Mercedes, others were speaking with Elien.  After confirming Elien was comfortable speaking English, officers read him his Miranda rights.  Elien agreed to speak without a lawyer present.  During the interview, officers learned a firearm was found in one of the vehicles believed to belong to Elien.  The officers asked Elien about the firearm, and he said it belonged to his friend.  Elien said he allowed his friend to keep the firearm in his car so long as it was not loaded.  But Elien later changed his story and said he had given his friend $400 for the firearm, and he anticipated his friend would later purchase it back for $500.

Also, during the interview, officers learned about two more firearms found in the vehicle.  They asked Elien about those additional firearms and he recanted his earlier statements, saying he did not know about any of the firearms.  At some point, Elien told officers he sold the car to his brother and was keeping it parked at his apartment building until his brother finished paying for it.  However, officers

4

testified that the Mercedes was registered to Elien and their research did not turn up a bill of sale indicating the car's title had been transferred to Elien's brother.

Also at trial, the government introduced a recording and the translated transcript of a jailhouse call made the day after Elien's arrest. The call's three participants spoke three languages—English, Portuguese, and Haitian Creole—during their discussion. Before trial, a certified translator for the Department of Homeland Security Investigation listened to the recording and prepared the transcript. However, the translator did not testify at trial. Instead, an agent who participated in the investigation of Elien testified about the jail recording and the transcript.

According to the transcript, a participant who identified himself as "Peter" asked a participant identified as "Graca" to get him a lawyer. Officers believed Graca was Elien's wife. On the call as translated by the Homeland Security agent, Peter told Graca, "you are going to need my name, my name is Elien Pierre." Peter told another call participant who called himself "Gui" that he needed a lawyer because "they found three guns inside my car." Later in the call, Peter asked Gui to "say I sell the car to you, so anything inside the car you don't have anything to do with it because the car belonged to you, because I sell the car to you." Peter also told Gui to have Graca "look for the title, to sign the title to [Gui's] name."

5

Before the recording and transcript were introduced, the agent testified that he received the recording after requesting phone calls pertaining to Elien from the jail's records custodian. The agent also testified that he recognized Elien's voice on the call. Out of the hearing of the jury, the prosecutor told the district court that during discovery the government provided defense counsel with the recording of the call, the certification of the interpreter who translated the call, and a business records affidavit from the jail's records custodian. Over Elien's objections, the district court allowed the government to admit the transcript and the recording.

At the close of the government's evidence, Elien moved for a directed verdict. Elien argued the government's evidence did not show he possessed the firearms. He noted that no DNA evidence or fingerprints linked him to the Mercedes, the firearms, or the ammunition. He also said the government did not show that he had driven the Mercedes on the day of the arrest. The district court denied the motion. After Elien elected not to put on any evidence, he renewed his motion. The district court again denied it.

After deliberating, the jury found Elien guilty of possession of a firearm and ammunition by a convicted felon. The district court later sentenced Elien to 27-months imprisonment. This is Elien's appeal.

## II.

## A.

6

Elien first challenges the district court's admission of the recording and translated transcript of the jail call.  Elien argues the district court abused its discretion by admitting the recording and the transcript because: the call's participants did not identify their voices on the call; the participants did not testify and thus did not verify that the transcript accurately reflected their discussion; and the law enforcement agent who prepared the transcript did not testify at trial to confirm the accuracy of the translation.

"We review a district court's decision to admit or exclude evidence for abuse of discretion."  United States v. Reeves, 742 F.3d 487, 501 (11th Cir. 2014).  "[E]ven where an abuse of discretion is shown, non-constitutional evidentiary errors are not grounds for reversal absent a reasonable likelihood that the defendant's substantial rights were affected."  Id. (quotation marks omitted).

The district court did not abuse its discretion by admitting the recording of the jail call.  To introduce an audio recording at trial, the government has the burden of presenting sufficient evidence to show that it "is an accurate reproduction of relevant sounds previously audited by a witness."  Id. (quotation marks omitted).  Ordinarily, the government must show "(1) the competency of the operator; (2) the fidelity of the recording equipment; (3) the absence of material deletions, additions, or alterations in the relevant portions of the recording; and (4) the identification of the relevant speakers."  Id.  "But even if one or more of these

7

requirements has not been satisfied, if there is independent evidence of the accuracy of the tape recordings admitted at trial, we shall be extremely reluctant to disturb the trial court's decision to admit the recording." Id. (alteration adopted and quotation marks omitted). "The district court has broad discretion in determining whether to allow a recording to be played before the jury," and this Court will only disturb the district court's decision if "there is no competent evidence in the record to support it." Id. (citation and quotation marks omitted).

There was sufficient evidence establishing the accuracy of the jailhouse recording. For one, an agent testified that he received the recording from the jail's records custodian when he requested records associated with Elien. Also, the government put into evidence a sworn affidavit from the jail's records custodian attesting that the recordings she supplied "consist[ed] of . . . communication recordings for [an] account number . . . assigned exclusively to Pierre Elien." Additionally, the testifying agent, who had investigated Elien and was present when Elien was arrested and interviewed, also testified that he recognized Elien's voice on the call. See Fed. R. Evid. 901(b)(5) (providing a witness may identify a voice "based on hearing the voice at any time under circumstances that connect it with the alleged speaker"); see also United States v. Puentes, 50 F.3d 1567, 1577 (11th Cir. 1995) (holding the government satisfied Rule 901(b)(5) where an officer became familiar with a defendant's voice while conducting wiretap surveillance).

8

And one of the call's participants identified himself as "Elien Pierre."  Based on this evidence, we decline to disturb the district court's decision to admit the recording.

As for the translated transcript, Elien has waived arguments challenging its accuracy.  This Circuit has a procedure for "challenging the accuracy of an English-language transcript of a conversation conducted in a foreign language." United States v. Curbelo, 726 F.3d 1260, 1271 (11th Cir. 2013) (quotation marks omitted).  "If the parties cannot agree on a stipulated transcript, then each side should produce its own version of a transcript or its own version of the disputed portions."  Id. (quotation marks omitted).  If a defendant does not use this procedure, he "waives his right to challenge the translation and the transcripts."  Id. (alteration adopted and quotation marks omitted).

Elien did not avail himself this procedure.  Before asking the district court to admit the transcript, the government explained that during discovery it provided Elien's counsel with the recording, a certification from the interpreter who translated the call, and an affidavit from the jail's records custodian.  The prosecutor said he offered Elien's counsel the opportunity to hire his own translator to interpret the calls.  Elien offered no explanation at trial or here on appeal, as to why he did not produce any alternative transcripts.  Because Elien did

not use this Circuit's established procedure for challenging the accuracy of an English-language transcript, he has waived this argument.  See id.

**B.**

Elien also argues the evidence at trial was legally insufficient to permit a jury to convict him of possession of firearms and ammunition by a convicted felon. Specifically, Elien says the government did not prove he possessed the firearms or ammunition.  He notes that the government did not produce evidence showing he was inside the vehicle where the firearms were recovered.  Elien also says the government did not show he had a key to the vehicle or that his DNA or fingerprints were found on the firearms or the ammunition.  Elien contends the evidence at trial showed he was "nowhere near the guns or the vehicle" on the day he was arrested and he had not been seen driving the car in which the firearms were discovered for more than ten months.

This Court reviews de novo a challenge to the sufficiency of the evidence. United States v. Taylor, 480 F.3d 1025, 1026 (11th Cir. 2007).  In doing so, we "view[] the evidence in the light most favorable to the government and draw[] all reasonable inferences and credibility choices in favor of the jury's verdict."  Id. We will affirm a district court's denial of a motion for judgment of acquittal "if a reasonable trier of fact could conclude the evidence established the defendant's guilt beyond a reasonable doubt."  Id.

To prove a violation of 18 U.S.C. § 922(g)(1), the government must show (1) the defendant was a convicted felon; (2) the defendant was in knowing possession of a firearm; and (3) the firearm was in or affecting interstate commerce. See United States v. Palma, 511 F.3d 1311, 1315 (11th Cir. 2008) (per curiam). To establish the possession element, the government can show either constructive or actual possession of the firearm. See United States v. Greer, 440 F.3d 1267, 1271 (11th Cir. 2006). "Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control." Id. This Circuit has said a "firearm need not be on or near the defendant's person in order to amount to knowing possession." United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004). Also, this Circuit has said constructive possession can be established by showing a defendant had dominion or control over the premises in which a firearm was located. See United States v. Vereen, 920 F.3d 1300, 1310 (11th Cir. 2019); see also United States v. Derose, 74 F.3d 1177, 1185 (11th Cir. 1996) ("[A] court may find constructive possession by finding ownership, dominion, or control over the contraband itself or dominion or control over the premises or the vehicle in which [the] contraband was concealed."). "However, a defendant's mere presence in the area of the contraband or awareness of its location is not sufficient to

11

establish possession." United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006) (quotation marks omitted).

Viewing the evidence in the light most favorable to the jury's verdict, a reasonable factfinder could find Elien constructively possessed the firearms and ammunition found in the silver Mercedes. At trial, agents testified the Mercedes was registered to Elien. See Wright, 392 F.3d at 1273–74 (observing that a defendant "owned the automobile in which the firearm was carried" in assessing the sufficiency of the evidence showing possession of the firearm). Agents also testified Elien was seen driving the Mercedes and that the car was often parked in a space assigned to Elien's apartment. According to agents, Elien initially acknowledged in an interview immediately after his arrest that there was a firearm in a vehicle that belonged to him. Agents also said Elien claimed he purchased one of the firearms with the expectation of selling it back to its original owner later. Additionally, a search of the Mercedes turned up a current Florida registration for the car listing Elien as its owner, proof of insurance for the car identifying Elien as the insured, a W-2 tax document listing earnings for Elien, medications prescribed to Elien, and receipts cataloging money sent by Elien. And in the jailhouse recording made the day after Elien's arrest, a speaker who identified himself as "Elien Pierre" told other call participants that officers "found guns in my car." On

12

this record, we conclude that the government presented sufficient evidence to convict Elien under 18 U.S.C. § 922(g)(1).

**AFFIRMED.**