[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12001

_____

D.C. Docket No. 3:18-cr-00055-TJC-JRK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEROME CURTIS STANCIL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 13, 2021)

Before BRANCH, GRANT, and TJOFLAT, Circuit Judges.

GRANT, Circuit Judge:

When Jerome Stancil was convicted for being a felon in possession of a

firearm, he already had three state-law drug convictions. According to the district

court, those Virginia convictions triggered the Armed Career Criminal Act's

mandatory minimum sentence: 15 years. Stancil appeals, arguing that his sentence

was wrongfully enhanced because the state statute of conviction criminalizes

conduct like sharing controlled substances.  He also argues that his felon-in-possession conviction should not stand because the police officers only found him in possession of a firearm as a result of an illegal search.  But because our precedents are clear that convictions under statutes like Virginia's qualify as predicates for an ACCA sentencing enhancement, and because the officers had probable cause to search Stancil's car, we find no error in the district court's judgment.  We affirm.

I.

Sergeant Adam Ardizzoni of the Jacksonville Sheriff's Office was running laser radar one night when he clocked a car traveling at 15 miles per hour over the speed limit.[1]  He radioed nearby Officer Rafael Lugo with an alert about the vehicle's speed.  Officer Lugo pulled the car over, and while he was running the tag, he saw the driver reach down several times.  Under cover of his spotlight, Officer Lugo approached the passenger side of the car—where he saw that the driver was still reaching down.  He radioed for backup, which arrived in the form of Sergeant Ardizzoni and another officer, Patrick Ivey.

No longer alone, Officer Lugo approached the driver's side window and made his first contact with the driver, Jerome Stancil.  When Stancil lowered the window, Officer Lugo asked for his driver's license, but he also noticed something inside Stancil's car—the smell of marijuana.  It was a familiar smell to Officer Lugo, who estimated that he had encountered it more than 20 times before in

---

[1] When reviewing a district court's denial of a motion to suppress, we construe the facts in the light most favorable to the prevailing party—here, the government.  *United States v. Ransfer*, 749 F.3d 914, 921 (11th Cir. 2014).

earlier traffic stops.  The smell was also familiar to Sergeant Ardizzoni, who had received narcotics training and similarly testified to smelling marijuana when Stancil's window came down.  Officer Lugo asked Stancil to step out of his car and ran Stancil's driver's license.  That check revealed that Stancil was a convicted felon on probation.

While Officer Lugo checked Stancil's license, Officer Ivey searched the car.  His apparent suspicion that he would find contraband was correct; he discovered a Taurus .40 caliber pistol loaded with ten rounds of ammunition under the driver's side floor mat.  Officer Lugo handcuffed Stancil and walked him over to the backseat of the police car.  After hearing the *Miranda* warning, Stancil decided to talk and admitted that the firearm was his.

A grand jury charged Stancil with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1).  Stancil moved to suppress the firearm and ammunition, arguing that they were the fruit of an unlawful search and seizure.  The motion was referred to a magistrate judge, who conducted an evidentiary hearing where Officer Lugo, Sergeant Ardizzoni, and Stancil's son—who had arrived at the scene after the arrest—testified.  The magistrate judge recommended denying the motion to suppress, and the district court adopted that recommendation.

Stancil waived his right to a jury trial and agreed to a stipulated bench trial, though he preserved his right to appeal the suppression decision.  Among other things, Stancil stipulated that he was a convicted felon, that he knowingly possessed a pistol, that his pistol was manufactured in Brazil, and that his pistol

qualified as a "firearm" within the meaning of 18 U.S.C. § 921(a)(3). Those stipulations were decisive for the district court, which found Stancil guilty.

Next came Stancil's sentencing hearing. The government presented three of Stancil's prior convictions, all of which came under Virginia Code § 18.2-248. The conduct underlying those convictions occurred in 1996, 1997, and 2004; the first two convictions were for possession of cocaine with intent to distribute, and the most recent was for manufacture, sale, distribution, or possession with intent to distribute cocaine and heroin. The district court found that all three qualified as serious drug offenses under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), which meant that Stancil was subject to a minimum sentence of 15 years. The court sentenced him to that minimum term of imprisonment. Stancil now appeals.

## II.

Stancil raises two real issues on appeal. He first argues that the district court erred when it found that he was an armed career criminal. He next claims that the district court erred when it denied his motion to suppress. Stancil also raises various claims of legal error, but he acknowledges that they are foreclosed by our precedent.

## A.

Stancil first contends that none of his prior convictions qualify as a "serious drug offense" under ACCA. We review this issue de novo. *United States v. Robinson*, 583 F.3d 1292, 1294 (11th Cir. 2009). "When conducting our review, we are bound by federal law when we interpret terms in the ACCA and bound by

state law when we interpret elements of state-law crimes." *United States v. Conage*, 976 F.3d 1244, 1249 (11th Cir. 2020) (quotation omitted).

Under ACCA, a person who violates § 922(g) and has three previous convictions for a "serious drug offense" that were "committed on occasions different from one another" is subject to a mandatory minimum sentence of 15 years' imprisonment. 18 U.S.C. § 924(e)(1). A "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance" for which "a maximum term of imprisonment of ten years or more is prescribed by law." *Id.* § 924(e)(2)(A)(ii).

We have construed those terms broadly. For one, our interpretation of "distributing" does not require "an exchange for value." *Hollis v. United States*, 958 F.3d 1120, 1122 (11th Cir. 2020). For another, we read "involving" to mean that a state statute "need not exactly match the specific acts listed in the ACCA's definition" for it to give rise to a serious drug offense. *United States v. White*, 837 F.3d 1225, 1235 (11th Cir. 2016) (quotation omitted); *see also Shular v. United States*, 140 S. Ct. 779, 782 (2020).

To determine whether a conviction under a state statute falls within those contours, we generally apply the categorical approach. *White*, 837 F.3d at 1229. That means we are not concerned about the specific facts of the defendant's prior convictions. *Id.* Instead, we consider only "the fact of the conviction and the statutory definition of the offense." *Id.* "When a state crime sweeps broader than ACCA's definitions, that crime cannot categorically qualify as an ACCA

5

predicate." *Beeman v. United States*, 899 F.3d 1218, 1229–30 (11th Cir. 2018). In other words, we "must presume that the conviction rested upon the least of the acts criminalized by the statute." *United States v. Oliver*, 962 F.3d 1311, 1316 (11th Cir. 2020) (quotation omitted). But that presumption has limits: "[t]he inquiry into the minimum conduct criminalized by the state statute must remain within the bounds of plausibility." *United States v. Dixon*, 874 F.3d 678, 681 (11th Cir. 2017).

Stancil argues that, whether or not his past crimes were themselves "serious drug offenses" under ACCA, the least culpable conduct under the statute of conviction is not. All three of his prior convictions were under Virginia Code § 18.2-248, which provides that it is unlawful to "manufacture, sell, give, distribute, or possess with intent to manufacture, sell, give or distribute a controlled substance." Va. Code § 18.2-248(A). According to Stancil, the least culpable conduct under that statute is giving or possessing with intent to give a controlled substance to another "only as an accommodation," without "intent to profit thereby from any consideration received."[2] *Id.* § 18.2-248(D). In his telling, that is not a "serious drug offense," because "giving" or possessing with intent to "give" a controlled substance does not involve "manufacturing, distributing, or possessing with intent to manufacture or distribute." *See* 18 U.S.C. § 924(e)(2)(A)(ii).

---

[2] Under Virginia law, the accommodation provision serves "to mitigate the punishment for the crime of distribution of a controlled substance." *Jones v. Commonwealth*, 822 S.E.2d 19, 23 (Va. Ct. App. 2018). "It is not a separate offense requiring that the Commonwealth prove different elements." *See id.*

6

We disagree. We were presented with a statute similar to § 18.2-248 in *Hollis v. United States*; that defendant had prior convictions under Alabama Code § 13A-12-211(a), which provides that a person commits unlawful distribution of a controlled substance if he "sells, furnishes, gives away, delivers, or distributes" the substance. Ala. Code § 13A-12-211(a); *see Hollis*, 958 F.3d at 1123. There too "giving away" is the least culpable conduct under the statute. *See* Ala. Code § 13A-12-211(a). We nonetheless held that the defendant's prior convictions "categorically qualif[ied] as predicate offenses" under ACCA. *Hollis*, 958 F.3d at 1123. In other words, we found that any violation of the Alabama statute— including "giving away" a controlled substance—is a predicate serious drug offense under ACCA.

Another one of our precedents is similarly fatal to Stancil's case. In *United States v. Robinson*, Robinson received an ACCA enhancement because of his prior conviction under Alabama Code § 13A-12-213(a). 583 F.3d at 1294–95. On its face, that statute does more than just criminalize possession with intent to give—it criminalizes possession of marijuana "for other than personal use." Ala. Code § 13A-12-213(a)(1). We affirmed Robinson's enhancement, reasoning that the statute, in criminalizing possession for other than personal use, necessarily "punishes the possession of marijuana with the intent to *distribute* to another." *Robinson*, 583 F.3d at 1296 (emphasis added). Put differently, our holding was that a conviction for possession of marijuana for other than personal use qualifies as a serious drug offense under ACCA. *Id.* at 1296–97. So this Circuit has already

7

rejected Stancil's argument that possession of drugs with intent to give them away without a profit motive is not a serious drug offense.

Stancil resists this logic on two grounds. *First*, he argues that because § 18.2-248 prohibits possession with intent to "manufacture, sell, give or distribute a controlled substance," the terms "sell" and "give" must include something beyond distribution. Otherwise, Stancil contends, "sell" and "give" would be rendered surplusage. Even if we credited that argument, however, that would only show that *Virginia's* definition of "selling" or "giving" is different than *Virginia's* definition of "distribution." It would not show that Virginia's definition of "selling" or "giving" is different than the *federal* definition of "distribution" in ACCA. ACCA's definition is what matters—and as we already know, it defines "serious drug offense" expansively. *See White*, 837 F.3d at 1233.

*Second*, Stancil argues that "social sharing among users"—which in his view is criminalized by the Virginia statute—is simply not "serious," so it cannot be a serious drug offense. But whether Stancil thinks his prior convictions are serious or trivial is irrelevant. Possession for "social sharing" is possession "for other than personal use," and it is *Robinson* that sets the standard—not Stancil's subjective impression of the gravity of his past crimes. *See* 583 F.3d at 1296–97.

In sum, prior convictions under § 18.2-248 categorically qualify as serious drug offenses within the meaning of ACCA. And Stancil has three of them. So when the district court applied the ACCA enhancement to Stancil's sentence, it did not err.

B.

Stancil next argues that the district court erred when it denied his motion to suppress because it improperly credited the officers' testimony. In particular, he contends that the officers were inconsistent about their locations relative to Stancil's car when the window was lowered. Stancil also points out that the officers mentioned various details at the suppression hearing—such as finding green leaves on the vehicle floorboard—that did not make it into their incident reports. Finally, he suggests that the magistrate judge might have credited the officers' testimonies based on their status as police officers.

In reviewing a denial of a motion to suppress, we are bound by the district court's findings of fact, as well as its credibility choices, unless we see a clear error. *United States v. Roy*, 869 F.2d 1427, 1429 (11th Cir. 1989). For credibility determinations, that means we must "accept the evidence unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotation omitted).

We see no clear error in the magistrate judge's decision to credit the testimonies of Sergeant Ardizzoni and Officer Lugo. As the magistrate judge noted, the officers "testified consistently with each other as to the sequence of events related to the traffic stop." Where Lugo apparently could not remember certain details, the magistrate judge said that it did "not appear that Officer Lugo was being untruthful; rather, his demeanor showed he simply could not remember this detail of the traffic stop." And Stancil's alleged inconsistencies—such as the

9

officers' relative positions to his car—do not render the magistrate judge's credibility determination "so inconsistent or improbable on its face that no reasonable factfinder could accept it."[3]  *Id.*

Crediting the officers' testimony, as the court was permitted to do, led to the obvious conclusion that the officers had probable cause to search Stancil's car.  To start, Stancil does not argue that the officers lacked probable cause to stop him in the first place.  That means Officer Lugo was permitted to conduct "ordinary inquiries incident to the traffic stop."  *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alterations adopted) (quotation omitted).  One such "ordinary inquiry" is "checking the driver's license"—and it was during that check that Officer Lugo and Sergeant Ardizzoni noticed the smell of marijuana.  *Id.*  And because "the smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle," that means the officers could search Stancil's car—even without considering the natural suspicion that followed from Stancil's motions in the car after he was pulled over.  *Merricks v. Adkisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015).

## C.

Lastly, Stancil alleges various errors so he can preserve them "for purposes of further review."  As Stancil acknowledges, each of these arguments is foreclosed by prior Supreme Court and Circuit precedent.

---

[3] We also reject any insinuation that the magistrate judge credited the officers' testimony merely because they were police officers.  The magistrate judge explicitly said that courts do "not consider the official rank or status of the witness" in making credibility determinations, and instead relied on the consistency of the testimonies and Officer Lugo's demeanor.

*First*, he argues that the district court violated his Fifth and Sixth Amendment rights in determining that his prior predicate offenses occurred on different occasions. More specifically, he contends that the district court could not determine that he had prior convictions that occurred on different occasions because he never stipulated to those facts and because the government should have had to charge those facts in the indictment and then prove them beyond a reasonable doubt at trial. But we have already held that district courts may look to a limited set of evidence, called *Shepard* documents, to determine whether crimes were committed on different occasions. *See United States v. Longoria*, 874 F.3d 1278, 1281 (11th Cir. 2017). *Shepard*-approved documents include the "terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant," or "some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). The district court relied on those sorts of documents here, and did not err in doing so. *See Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998).

*Second*, he asserts that 18 U.S.C. § 922(g)(1) exceeds Congress's authority under the Commerce Clause.[4] But we have already held that § 922(g) is within Congress's Commerce Clause powers. *See United States v. Dupree*, 258 F.3d

---

[4] To preserve this issue below, Stancil argued the unconstitutionality of § 922(g)(1) in a post-trial motion to dismiss his indictment. The district court denied that motion. We need not consider whether that motion was timely to preserve his argument, because under any standard of review, we are bound to uphold the constitutionality of § 922(g)(1). *See United States v. Dupree*, 258 F.3d 1258, 1259–60 (11th Cir. 2001).

1258, 1259–60 (11th Cir. 2001).  So while it is Stancil's prerogative to preserve this argument, it cannot succeed here.

\*     \*     \*

The district court's judgment is **AFFIRMED.**