[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 23-12994

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LOUIS MICHAEL PASQUAZZI,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:23-cr-00010-SPC-NPM-1

————————————

Before JORDAN, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Louis Pasquazzi appeals his conviction and 216-month sentence for possession of a firearm by a convicted felon and possession with intent to distribute a controlled substance. On appeal, Pasquazzi challenges his designation as an armed career criminal. He first argues that his prior Florida conviction for aggravated assault was improperly categorized as a violent felony under the Armed Career Criminal Act ("ACCA"). Second, he argues that his prior Florida aggravated battery conviction was improperly categorized as a violent felony under the ACCA because Florida aggravated battery can rest on simple battery. Third, he argues that his prior Florida cocaine conviction was improperly categorized as a serious drug offense under the ACCA. Lastly, Pasquazzi argues that his conviction for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), violates the Commerce Clause facially and as applied to him.

## I. Aggravated Assault

We review *de novo* whether a prior conviction qualifies as a violent felony under the ACCA. *United States v. Vereen*, 920 F.3d 1300, 1312 (11th Cir. 2019).

To qualify as a violent felony under the ACCA's elements clause, a conviction must have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B). We employ the categorical

approach to determine whether a conviction necessarily requires the use or threatened use of physical force, looking only at the elements of a defendant's prior offenses and not to the facts underlying those convictions. *United States v. Jones*, 906 F.3d 1325, 1327-28 (11th Cir. 2018). An offense is a violent felony under the ACCA "if even the least culpable conduct criminalized by the statute would fall within the ACCA definition." *Id.* at 1328 (quotation marks omitted).

When determining what the elements of a state offense are, a reviewing court must look to the state's case law defining those elements. *United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012). In Florida, an aggravated assault is "an assault: (a) [w]ith a deadly weapon without intent to kill; or (b) [w]ith an intent to commit a felony." Fla. Stat. Ann. § 784.021. An assault is defined as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." *Id.* § 784.011.

In *McNeill v. United States*, in the context of the ACCA, the Supreme Court explained that, because the ACCA requires the court to determine whether a previous conviction was a "serious drug offense," it must look backward and "consult the law that applied at the time of that conviction." 563 U.S. 816, 820 (2011). It held that, even though Congress used present tense language in the ACCA, it was not persuaded that Congress intended to "look anywhere other than the law under which the defendants were

actually convicted to determine the elements of their offenses." *Id.* at 821-22. The Court also expressed that it would be "absurd" to consult current state law to define a previous offense. *Id.* at 822; *but see Johnson v. United States*, 576 U.S. 591, 604-05 (2015) ("Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions.")

In *Turner v. Warden Coleman FCI (Medium)*, we held that Florida aggravated assault categorically qualifies as a violent felony under the ACCA's elements clause. 709 F.3d 1328, 1338 (11th Cir. 2013). Specifically, we held that "by its definitional terms," an assault requires the threatened use of violence against another. *Id.*

In *United States v. Golden*, we held that *Turner* foreclosed the appellant's argument that a Florida conviction for aggravated assault did not constitute a "crime of violence" under U.S.S.G. § 4B1.2(a)(1) of the Sentencing Guidelines. 854 F.3d 1256, 1256-57 (11th Cir. 2017). We noted that "some members of our court have questioned the continuing validity of *Turner*," but continued, "even if *Turner* is flawed, that does not give us, as a later panel, the authority to disregard it." *Id.* at 1257.

In *Borden v. United States*, a plurality of the Supreme Court concluded that a criminal offense that can be committed with a *mens rea* of recklessness does not qualify as a "violent felony" under the ACCA's elements clause. 593 U.S. 420, 441-42 (2021) (plurality opinion). Ultimately, the Court reversed and remanded Borden's ACCA-enhanced sentence, which had been based in part on a prior

Tennessee conviction for reckless aggravated assault. *Id.* at 444 (plurality opinion).

In *Somers*, we originally affirmed the denial of a 28 U.S.C. § 2255 motion, holding that the movant's Florida aggravated assault conviction under § 784.021 qualified as a violent felony under the ACCA's elements clause under *Turner* and *Golden*. *Somers v. United States*, 799 F. App'x 691, 692-93 (11th Cir. 2020) ("*Somers I*") (unpublished). We then held the mandate pending the Supreme Court's decision in *Borden*, and, after *Borden* was decided, granted rehearing, vacated the former opinion, substituted a new opinion in its place, and certified to the Florida Supreme Court two questions regarding Florida's assault statute:

1. Does the first element of assault as defined in Fla. Stat. § 784.011(1) – "an intentional, unlawful threat by word or act to do violence to the person of another" – require specific intent?

2. If not, what is the *mens rea* required to prove that element of the statute?

*Somers v. United States*, 15 F.4th 1049, 1051, 1056 (11th Cir. 2021). We noted that the Florida Supreme Court had not answered whether Florida aggravated assault requires specific intent and that there was a split in authority in the intermediate Florida state appellate courts on the *mens rea* required by the Florida assault statutes. *Id.* at 1054-56.

The Florida Supreme Court answered the two certified questions in *Somers v. United States*, 355 So. 3d 887, 892 (Fla. 2022)

("*Somers II*").  First, it held that, by its plain language, § 784.021 cannot be violated without targeting another individual with violence or the threat of violence.  *Id.*  Second, the Florida Supreme Court concluded that, because the criminal act must be directed towards a specific individual, the statute cannot be violated recklessly, but requires at least knowing conduct.  *Id.*  The Florida Supreme Court did not address the prior split in Florida intermediate courts about the requisite *mens rea* for a violation of the statute.  *Id.* at 887-93.

In *Somers III*, we relied on the Florida Supreme Court's conclusion that aggravated assault under Florida law requires a *mens rea* of at least knowing conduct and could not be committed recklessly to hold that Florida aggravated assault "categorically qualifies" as a violent felony under the ACCA's elements clause, even after *Borden*.  *Somers v. United States*, 66 F.4th 890, 895-96 (11th Cir. 2023).  Moreover, we held that the Florida Supreme Court's interpretation revealed "what that statute always meant" and stated that the appellant "cannot rely on earlier decisions of Florida's intermediate courts of appeal to avoid this clear holding."  *Id.* at 896.

In *Brown v. United States*, the Supreme Court cited *McNeill* to explain that courts examine the law as it was when it was violated by the defendant because the ACCA is "backward-looking" to determine culpability and dangerousness.  602 U.S. 101, 111 (2024).  It continued that a defendant's criminal history "does not cease to exist merely because the crime was later redefined."  *Id.* at 113-14 (quotation marks omitted).

Under our prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). "While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point." *Id.* (quotation marks omitted). That the reasoning of an intervening Supreme Court decision conflicts with that of our prior decision is no basis for a panel to depart from the prior decision. *United States v. Vega-Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008). Moreover, we have, "categorically rejected an overlooked reason or argument exception to the prior-panel-precedent rule." *United States v. Hicks*, 100 F.4th 1295, 1300 (11th Cir. 2024) (quotation marks omitted).

Pasquazzi cannot show error. He argues that *Somers III* did not apply the backward-looking approach properly, but *Somers III*'s holding forecloses his argument, regardless of the reasoning used to reach that result. And Pasquazzi's argument that *Brown* has abrogated *Somers III* is unpersuasive. *Brown* said nothing about the meaning of Florida's aggravated assault statute. Moreover, even the reasoning of *Brown* is not in conflict with the reasoning of *Somers III*; *Brown* involved a legislative amendment which changed relevant law, whereas the Florida Supreme Court in *Somers II* interpreted the Florida aggravated assault statute to reveal what it has always meant. Also, *McNeill* predated *Turner* and *Golden*, which both held that Florida aggravated assault categorically qualifies as a violent felony under the ACCA elements clause. *Turner*, 709 F.3d

at 1338; *Golden*, 854 F.3d at 1256-67.  Additionally, *Borden* did not call these holdings into question because *Somers III*, which still held that aggravated assault is an ACCA violent felony, was decided after *Borden*.  *Borden*, 593 U.S. at 441; *Somers III*, 66 F.4th at 896. Pasquazzi argues that the "what that statute always meant" portion of the holding in *Somers III* was incorrect, but, while he disagrees with this Court's approach, he does not make any argument that it has been abrogated by clearly on point precedent.  *Somers III*, 66 F.4th at 896; *Archer*, 531 F.3d at 1352.  Therefore, we affirm the district court's categorization of Pasquazzi's conviction for aggravated assault as a violent felony under the ACCA.

## II.  Aggravated Battery

Under Fla. Stat. Ann. § 784.045, a defendant commits aggravated battery by committing a battery: (1) that intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; (2) that uses a deadly weapon; or (3) upon a victim whom the offender knows to be pregnant.  Fla. Stat. Ann. § 784.045(1).  Battery, in turn, is defined as (1) actually and intentionally touching or striking another person against that person's will, or (2) intentionally causing bodily harm to another person.  *Id.* § 784.03(1)(a).

In *Turner*, we applied a modified categorical approach—by which a court analyzes a statute that covers several generic crimes and looks at documents to determine which statutory phrase was the basis for the conviction—in holding that a conviction for aggravated battery under § 784.045 qualified as a violent felony under

the ACCA. 709 F.3d at 1335, 1341. There, we considered the defendant's conviction for stabbing a man in the chest, and concluded that because the victim was male, we could rule out battery upon a pregnant female as a basis for the defendant's conviction. *Id.* at 1341. We then held that either of the other two possible bases for the defendant's conviction—(i) intentionally or knowingly causing great bodily harm or (ii) using a deadly weapon—has "as an element the use, attempted use, or threatened use of physical force" and, thus, qualifies as a violent felony under the ACCA. *Id.*; *see also Vereen*, 920 F.3d at 1313-14 (recognizing prior panel precedent that a Florida aggravated battery conviction qualifies as a violent felony under either of the first two alternatives in § 784.045).

In *United States v. Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a predicate crime of violence under § 924(c)(3)(A)'s elements clause. 596 U.S. 845, 859 (2022). The Court noted that, while the government would have to show that the defendant took an "unequivocal" and "significant" step towards committing robbery, the government need not show that the defendant actually used, attempted to use, or even threatened to use force, as required by § 924(c). *Id.* at 851. The Court stressed that "an intention to take property by force or threat, along with a substantial step toward achieving that object, . . . is just that, no more." *Id.* Because an attempt to commit a crime of violence will not always involve even an attempt or a threat to use force, an attempted Hobbs Act robbery does not qualify as a predicate crime of violence for purposes of the elements clause. *Id.* at 854 (noting that it is true that many who commit attempted

Hobbs Act robberies do use, attempt to use or threaten to use force, "[b]ut *some* cases are not *all* cases, and the government's problem is that no *element* of attempted Hobbs Act robbery requires the government to prove beyond a reasonable doubt that the defendant used, attempted to use, or even threatened to use force."(emphasis in the original)).

The district court did not err in categorizing Florida aggravated battery as an ACCA violent felony based on the prior-panel-precedent rule. *Turner*, 709 F.3d at 1341; *Archer*, 531 F.3d at 1352. Pasquazzi's argument that *Taylor* abrogated *Turner* is unpersuasive because the two cases differ in significant ways, including the fact that the prior offense in *Taylor* was a mere attempt, and the fact that *Taylor* said nothing about the meaning of Florida's aggravated battery crime. *Turner* is squarely on point, in that it used the modified categorical approach to hold that Florida aggravated battery was an ACCA violent felony, while *Taylor* discussed the federal offense of attempted Hobbs Act robbery under the elements clause of § 924(c)(3)(A). *Turner*, 709 F.3d at 1341; *Taylor*, 596 U.S. at 850. This Court has not determined in a published decision whether *Borden* affected the holding in *Turner*, and there is no other precedent to support Pasquazzi's argument that *Turner* was abrogated. *Borden*, 593 U.S. at 428. Additionally, Pasquazzi argues that his conviction did not require use of force or touching another with the firearm, but this Court already has held that aggravated battery with a deadly weapon is an ACCA violent felony, foreclosing this argument. *Turner*, 709 F.3d at 1341; *Vereen*, 920 F.3d at 1313-14. Accordingly, we affirm as to this issue.

### III. Cocaine Conviction

The third predicate supporting Pasquazzi's armed career criminal status was his 1998 Florida cocaine conviction under Fla. Stat. Ann. § 893.13(1)(a). We review *de novo* whether a prior state law conviction qualifies as a "serious drug offense" for purposes of the ACCA. *United States v. Jackson*, 55 F.4th 846, 849-50 (2022) ("*Jackson II*"). To preserve an objection for appeal, the defendant must "raise [the] point in such clear and simple language that the trial court may not misunderstand it." *United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006) (quotation marks omitted). An issue is not properly preserved if its "factual predicates" were in the record but presented to the court under a different legal theory. *United States v. Corbett*, 921 F.3d 1032, 1043 (11th Cir. 2019).

In *United States v. Innocent*, we reasoned that, even if the defendant did not invite error, plain-error review applied because he did not raise the error that he asserted on appeal in front of the district court. 977 F.3d 1077, 1085 (11th Cir. 2020). An appellant survives plain error only when (1) an error has occurred, (2) the error was plain, (3) the error affected the defendant's substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Rosales-Mireles v. United States*, 585 U.S. 129, 134-35 (2018).

The ACCA requires that any person who violates § 922(g) serve a mandatory minimum sentence of 15 years when the defendant is an "armed career criminal," meaning they have 3 prior convictions for "violent felonies" or "serious drug offenses"

committed on separate occasions. 18 U.S.C. § 924(e)(1). The ACCA defines a "serious drug offense," in relevant part, as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance," with controlled substances defined by the Controlled Substances Act ("CSA"), 21 U.S.C. § 802. *Id.* § 924(e)(2)(A)(ii). Section 102 of the CSA defines a "controlled substance" as any substance on the federal controlled substances schedules. *See* 21 U.S.C. §§ 802(6), 812. Federal law governs the meaning of terms in the ACCA, and state law governs the elements of state-law crimes. *Jackson II*, 55 F.4th at 850.

Under Florida law, it is illegal for a person to sell, manufacture, deliver, or possess with intent to sell, manufacture, or deliver, a controlled substance. Fla. Stat. Ann. § 893.13(1)(a). Section 893.03 outlines Florida's controlled substances schedules and includes cocaine. *Id.* § 893.03(2)(a)4. In 1998, Florida's controlled substances schedule included stereoisomers. *Id.* § 893.03(2)(a)4 (1998). In 1998, the federal drug schedule included "cocaine, its salts, optical and geometric isomers." 21 C.F.R. § 1308.12(b)(4) (1998). We have held that violations of § 893.13(1) qualify as serious drug offenses for ACCA purposes. *Jackson II*, 55 F.4th at 861-62.

In *Jackson I*, we initially determined that the federal controlled substances schedules that defined a "serious drug offense" under the ACCA were those in effect when the defendant committed his federal offense. *United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022) ("*Jackson I*"), *superseded by Jackson II*, 55 F.4th 846.

Thereafter, we *sua sponte* vacated our opinion in *Jackson I* on September 8, 2022. (CM/ECF for 11th Cir., case no. 21-13963, doc. 54 at 1-2). Then, in *Jackson II*, we held that the "ACCA's 'serious drug offense' definition incorporates the version of the controlled-substances list in effect when the defendant was convicted of his prior state drug offense." 55 F.4th at 849, 861. The Supreme Court thereafter granted a writ of *certiorari* in *Jackson II* and affirmed our decision, holding that "a prior state drug conviction constitutes an ACCA predicate if the drugs on the federal and state schedules matched when the state drug offense was committed." *Brown*, 602 U.S. at 108, 119.

In *Chamu v. U.S. Att'y Gen.*, we considered an immigrant's eligibility for cancellation of removal based on whether he committed an offense related to a controlled substance banned under federal law. 23 F.4th 1325, 1329 (11th Cir. 2022). The petitioner had a prior Florida conviction for cocaine possession under § 893.13(6)(a). *Id.* We determined that the central issue was that Florida defined cocaine using one subset of isomers, "stereoisomers," and federal law listed another subset, cocaine's "optical and geometric isomers," in its definition. *Id.* Further, we stated that litigants must show a realistic probability, not a mere theoretical possibility, that the State would apply its statute to conduct that would not meet the federal definition. *Id.* at 1330. While the litigant may point to facial textual differences, those differences must "carry actual legal consequences." *Id.* The simplest way for an offender to show this is to "point to a case" in which the state statute was used to prosecute conduct outside the scope of the federal

statute. *Id.* We concluded that, when the two statutes only contain different words, but do not diverge to any significant degree, there is not a realistic probability of broader prosecution. *Id.*; *United States v. Vail-Bailon*, 868 F.3d 1293, 1306 (11th Cir. 2017) (concluding that the realistic-probability test requires the defendant to show that there is a realistic probability that the state would prosecute conduct that falls outside the scope of the federal definition).

In *United States v. Laines*, we considered another argument that a Florida cocaine conviction did not constitute a serious drug offense under the ACCA. 69 F.4th 1221, 1226 (11th Cir. 2023). In considering the claim for plain error, we distinguished *Chamu* and stated that, in that case, it considered whether § 893.13(6)(a) was a "controlled substance" for the purposes of the INA, not a "serious drug offense" under the ACCA. *Id.* at 1233-34. We continued that *Chamu* did not abrogate our precedent on violations of § 893.13(6)(a) as serious drug offenses under the ACCA. *Id.* We concluded that, because the defendant's claim was reviewed for plain error, he had the burden to show that the district court erred, and we rejected his claim because he did not meet this burden and did not identify any precedent to make it "obvious" or "clear" that the Florida definition of cocaine was overbroad. *Id.*

We review this issue for plain error. *Innocent*, 977 F.3d at 1085. At sentencing, Pasquazzi recognized that this Court's precedent in *Jackson II* foreclosed his argument, but preserved his argument in case the Supreme Court were to overrule this Court in *Brown*. The Supreme Court, however, affirmed this Court's

reasoning from *Jackson II* in *Brown*, and Pasquazzi did not claim that *Jackson II* did not apply to his case. Additionally, Pasquazzi did not mention stereoisomers in his objection to the PSI or at sentencing, but rather specifically discussed this Court's analysis in *Jackson II* regarding ioflupane and made a general objection to the use of the conviction as an ACCA predicate offense. Pasquazzi did not raise the isomers argument in front of the district court with enough clarity to put the court on notice that he wished to preserve any isomers argument, thus subjecting him to plain-error review. *Innocent*, 977 F.3d at 1085; *Massey*, 443 F.3d at 819. Pasquazzi simply recognized that there was precedent contrary to his position, and preserved his argument if the Supreme Court were to overrule this Court's precedent, and he discussed the background of *Jackson II* in the context of his federal cocaine conviction, which did not make clear to the district court that he also wished to preserve a discrete stereoisomers argument. *Massey*, 443 F.3d at 819.

Pasquazzi's argument does not survive plain-error review because this Court held in *Laines* that, under plain-error review,[1] the defendant had the burden to make it obvious or clear that the statute was overbroad, which Pasquazzi did not. *Laines*, 69 F.4th at 1234. Pasquazzi cites no cases in which Florida prosecuted conduct under the cocaine definition that the federal definition would

---

[1] Because plain error review applies, we need not address the burden of proof in *de novo* review. *See United States v. Vail-Bailon*, 868 F.3d 1293, 1306 (11th Cir. 2017) (en banc); *United States v. Coats*, 8 F.4th 1228, 1249 (11th Cir. 2021); *United States v. White*, 837 F.3d 1225, 1230 (11th Cir. 2016).

not cover, but rather seeks to put the burden on the government to do so, which is inapt on plain-error review. *Chamu*, 23 F.4th at 1329. Accordingly, Pasquazzi did not show a realistic probability that Florida would prosecute conduct outside the scope of the federal definition. *Vail-Bailon*, 868 F.3d at 1306, and we affirm on this issue.

## IV. Constitutionality of 922(g)

While we generally review the constitutionality of a statute *de novo*, we review only for plain error when a defendant raises such a challenge for the first time on appeal. *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010). The Commerce Clause reads: "The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. We have held that § 922(g) is constitutional under the Commerce Clause. *United States v. Stancil*, 4 F.4th 1193, 1200 (11th Cir. 2021). We have also rejected as-applied challenges to § 922(g), holding that the government proves a "minimal nexus" to interstate commerce where it proves that the firearms were manufactured outside the state where the offense took place and, thus, necessarily traveled in interstate commerce. *Wright*, 607 F.3d at 715-16. In *United States v. McAllister*, we again held that § 922(g) was constitutional as applied to the defendant because the government met the "minimal nexus" requirement by proving that the firearm previously had traveled in interstate commerce, rejecting the defendant's claim that his purely intrastate possession did not affect interstate commerce. 77 F.3d 387, 390 (11th Cir. 1996).

23-12994                 Opinion of the Court                 17

Here, Pasquazzi's challenge to § 922(g)(1) constitutionality is foreclosed by precedent.  Accordingly, we affirm this issue.

For the foregoing reasons, the decision of the district court is

**AFFIRMED.**