**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-14083

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

ANTOINE JOHNSON,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cr-00139-CEM-LHP-1

————————————

Before NEWSOM, BRASHER, and HULL, Circuit Judges.

PER CURIAM:

After a bifurcated jury trial, Antoine Johnson challenges his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Johnson argues that

(1) the district court erred in denying his motion to suppress; and (2) there was insufficient evidence supporting the jury's finding that he committed three prior felony offenses on separate occasions—a finding that triggered a sentence enhancement under the Armed Career Criminal Act (the "ACCA"). After careful review, we affirm.

## I.  BACKGROUND

### A.  Traffic Stop and Search

After sunset on May 9, 2023, Officer Brett Naymik of the Palm Bay Police Department responded to a shots heard call in a high-crime area of Palm Bay, Florida. When departing the area, Naymik observed Antoine Johnson riding his bike across a public roadway with no lights visible in violation of Fla. Stat. § 316.2065(7). Naymik activated his vehicle's lights and initiated a traffic stop.

As Officer Naymik parked his vehicle in the median, Johnson, now on the sidewalk adjacent to the roadway, remarked, "I put my lights on . . . I put my lights on now." Naymik responded, "Well they weren't on, so we are gonna have a chat." Approaching Johnson, Naymik asked, "You got any guns or anything?" Johnson responded no.

Officer Naymik asked dispatch to run Johnson's social security number. Naymik asked Johnson whether he was ever arrested and whether he had any "gun charges." Johnson stated he had been arrested, including for a "strong-arm robbery." Johnson still sat unrestrained on his bike, just next to a highway busy with passing cars.

Within minutes, Officer Naymik observed a marijuana blunt perched behind Johnson's ear and asked about it. Johnson lamented that he had "forgotten all about" the blunt. Johnson handed the blunt over to Naymik, who radioed for back up but left Johnson unrestrained on his bike. Johnson denied having anything else illegal on him.

Around eight minutes into the encounter, dispatch radioed back and did not indicate that Johnson had any pending arrest warrants. A second officer arrived less than two minutes later.

Officer Naymik, along with the second officer, searched, arrested, and placed Johnson in handcuffs. During the search, Naymik found a small caliber revolver concealed in Johnson's waistband. Enraged by the discovery, Naymik berated Johnson for failing to inform him of the firearm.

Officer Naymik asked, "Are you convicted?" Johnson responded that he was. Naymik asked whether the revolver was stolen. Johnson said he had bought the gun for $200. Naymik also found ammunition and nominal quantities of Alprazolam and cocaine on Johnson's person.

The officers collected the seized items and waited for nearly forty minutes for an arrestee transport vehicle. During that period, Officer Naymik relocated Johnson to the tailgate of his truck, and eventually asked Johnson, "What are you convicted for?" Johnson responded he was convicted in 2002 for armed robbery.

## B.    Indictment

A grand jury in the Middle District of Florida indicted Johnson for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(e). The indictment listed Johnson's three prior felony convictions, including:

1.  Sale of Cocaine, committed on or about October 29, 1999, and convicted on or about June 21, 2000,

2.  Sale of Cocaine, committed on or about February 12, 2000, and convicted on or about June 21, 2000,

3.  Robbery, committed on or about June 15, 2002, and convicted on or about August 27, 2008.

## C.    Motion to Suppress

In the district court, Johnson filed a motion to suppress evidence derived from the May 9, 2023 traffic stop, including (1) the firearm; (2) one round of .38 special ammunition; (3) nominal amounts of Alprazolam and cocaine; and (4) any statements Johnson made during the stop. The government opposed Johnson's motion.

Johnson primarily argued that Officer Naymik lacked reasonable suspicion or probable cause to stop and detain him for violation of Fla. Stat. § 316.2065(7), which requires that bicycles "in use between sunset and sunrise" be equipped with a headlight and taillight. Johnson asserted that he had walked his bike across the road and then turned on proper lighting when he mounted his bicycle. Thus, Johnson argued that, at the time he crossed the road,

his bicycle was not "in use" such that his failure to activate the lights constituted a violation of section 316.2065(7). Johnson pointed out that his bicycle's lights were activated at all times captured on Naymik's body camera footage.

At an evidentiary hearing, Officer Naymik testified and recounted the stop, arrest, and search of Johnson. The government played video of the encounter captured on Naymik's body camera. Johnson did not testify.

The district court denied Johnson's motion to suppress. The district court credited Officer Naymik's testimony and found that he had observed Johnson "riding a bicycle across a public roadway without 'a lamp on the front exhibiting a white light' in violation of Fla. Stat. § 316.2065(7)." The district court found (1) Naymik had probable cause to stop and briefly detain Johnson for a traffic violation; (2) Naymik had probable cause to arrest Johnson for illegal marijuana possession; (3) the search of Johnson that uncovered the firearm was a permissible search incident to arrest; and (4) the totality of the circumstances surrounding Naymik's questions did not require *Miranda* warnings.

## D.    First Phase of Trial

At Johnson's request, the district court held a bifurcated jury trial. The first phase of the trial involved whether Johnson had, on May 9, 2023, knowingly possessed a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). The parties stipulated that Johnson was convicted of a felony prior to May 9, 2023.

The government called two witnesses. First, Officer Naymik testified and recounted stopping, searching, and arresting Johnson on May 9, 2023. The government published and played portions of Naymik's body camera footage, which showed him discovering the revolver in Johnson's waistband. Through Naymik, the government introduced Johnson's statements that he (1) had a prior felony conviction; (2) bought the revolver for $200; (3) had made a makeshift holster himself; and (4) was convicted in 2002.

Second, Bryan Page, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), testified as an expert on the interstate commerce nexus for firearms. Special Agent Page opined that the revolver found on Johnson had traveled in interstate and foreign commerce. Page recounted the results of a firearm trace for the revolver, which revealed that the revolver was (1) manufactured in Brazil; (2) imported by a Miami-area company; and (3) shipped to a K-Mart in Missouri.

The jury found Johnson guilty.

E.     **Second Phase of Trial**

The second phase of the trial involved whether Johnson's three prior felonies listed in the indictment occurred on different occasions for purposes of the ACCA. *See Erlinger v. United States*, 602 U.S. 821, 834-35 (2024) (holding whether violent felonies or serious drug offenses occurred on occasions different from one another for ACCA purposes must be determined by a jury).

The government introduced state court informations and judgments for Johnson's three convictions: (1) a cocaine sale on

October 29, 1999; (2) a cocaine sale on February 12, 2000; and (3) a robbery on June 15, 2002. The government's fingerprint examiner verified that Johnson's fingerprints appeared in the booking records for each of those three state offenses.

The state court information (filed on August 24, 1999) for Johnson's first cocaine sale conviction alleged that the offense was committed on October 21, 1998. But the booking sheet stated Johnson was arrested for the offense on October 28, 1999. And the federal indictment in this case similarly stated that the offense was committed "on or about October 29, 1999."

But based on these date discrepancies, Johnson moved for a judgment of acquittal. In Johnson's view, the October 21, 1998 date in the state court information meant the government had introduced no evidence to support a finding Johnson had committed a predicate offense on October 29, 1999—the date alleged in the federal indictment and stated in the state booking sheet. The government argued that it did not matter whether the date of the first cocaine sale was October 21, 1998, or October 29, 1999. Either way, the evidence was sufficient to show the three predicate offenses occurred on three different occasions. The district court agreed with the government and denied Johnson's motion for judgment of acquittal.

Johnson testified regarding his prior convictions. For his first cocaine sale conviction, Johnson testified that he committed the cocaine offense in 1999—which was consistent with the federal indictment. On cross-examination, Johnson acknowledged that he

committed and was arrested for his two cocaine offenses on different dates or occasions. On redirect, Johnson's counsel had Johnson highlight another discrepancy between the federal indictment and the state court documents for Johnson's first cocaine offense. Particularly, the state court information was filed on August 24, 1999, but the federal indictment said the underlying offense was committed two months later in October 1999.

The jury was provided a special verdict form that asked them to resolve one question:

> Has the Government has proved [sic] beyond a reasonable doubt that the Defendant, Antoine Johnson, previously committed the following offenses on occasions different from one another: (1) Sale of Cocaine, committed on or about October 29, 1999, in Brevard County, Florida; (2) Sale of Cocaine, committed on or about February 12, 2000, in Brevard County, Florida; and (3) Robbery, committed on or about June 15, 2002, in Brevard County, Florida[?]

During deliberations, the jury sent a note to the district court and asked, "Are we deciding based upon the dates or that there are three separate crimes?" The note continued: "The dates are incorrect, and we want to know if we need to consider the dates. Specifically, on the 1st count, October 21, 1998 . . . [t]he special verdict finding say[s] 1999." The government argued that the jury need determine only whether the three felony offenses occurred on separate dates or occasions, not whether they

occurred on the exact dates in the indictment. Johnson argued the government made the dates an element of his offense by including them in the indictment.

In response to the note, the district court repeated its instruction from the earlier jury charge, which said:

> The [g]overnment doesn't have to prove that the offense occurred on an exact date. *The [g]overnment only has to prove beyond a reasonable doubt that the crime was committed on a date reasonably close to the date alleged.* I'm going to ask you to apply that language and the legal instruction I gave you to the exact language of the verdict form. Hopefully that will assist you in arriving at your conclusion.

(emphasis added). The jury returned a special verdict finding the government had proved beyond a reasonable doubt that Johnson committed the three felony offenses listed in the indictment on different occasions.

## F.     Sentence and Appeal

The district court sentenced Johnson to fifteen years imprisonment—the mandatory minimum under the ACCA. 18 U.S.C. § 924(e). Johnson timely appealed.

## II.   STANDARD OF REVIEW

"A mixed standard of review applies to the denial of a motion to suppress." *United States v. Dixon*, 901 F.3d 1322, 1338 (11th Cir. 2018) (citing *United States v. Barber*, 777 F.3d 1303, 1304 (11th Cir. 2015)). We review the district court's factual findings for

24-14083              Opinion of the Court                10

clear error, viewing the evidence in the light most favorable to the prevailing party. *Id.* (quoting *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir. 2015)); *Barber*, 777 F.3d at 1304. We review *de novo* the district court's legal conclusions. *Dixon*, 901 F.3d at 1338 (quoting *Johnson*, 777 F.3d at 1274).

"We review *de novo* the sufficiency of the evidence." *United States v. Bell*, 112 F.4th 1318, 1331 (11th Cir. 2024) (citing *United States v. Watkins*, 42 F.4th 1278, 1282 (11th Cir. 2022)). In so doing, we view trial evidence in the light most favorable to the jury's verdict. *Id.*

### III.  MOTION TO SUPPRESS—PHYSICAL EVIDENCE

### A.    The Stop

Johnson first argues the district court erred by denying his motion to suppress because Officer Naymik did not have reasonable suspicion or probable cause to stop Johnson for violating Fla. Stat. § 316.2065(7).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop is a seizure within the meaning of the Fourth Amendment." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). A traffic stop is constitutional under the Fourth Amendment if it is based on probable cause to believe a traffic violation has occurred. *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (citing *United States v. Chanthasouxat*, 342 F.3d 1271, 1274 (11th Cir. 2003)).

Probable cause exists where "the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Herzbrun*, 723 F.2d 773, 775 (11th Cir. 1984) (citation modified). Observation of a traffic violation gives an officer probable cause to conduct a traffic stop. *See Harris*, 526 F.3d at 1338.

Here, given the district court's fact finding, Officer Naymik had probable cause to stop Johnson for violation of Fla. Stat. § 316.2065(7). That statute provides in relevant part:

> Every bicycle in use between sunset and sunrise shall be equipped with a lamp on the front exhibiting a white light visible from a distance of at least 500 feet to the front and a lamp and reflector on the rear each exhibiting a red light visible from a distance of 600 feet to the rear.

Fla. Stat. § 316.2065(7). The district court credited Officer Naymik's testimony and found that he observed Johnson using—pedaling and riding—the bicycle without proper lights.

Johnson has shown no clear error in this factual finding. *See United States v. Stancil*, 4 F.4th 1193, 1199 (11th Cir. 2021) ("In reviewing a denial of a motion to suppress, we are bound by the district court's findings of fact, as well as its credibility choices, unless we see a clear error." (citing *United States v. Roy*, 869 F.2d 1427, 1429 (11th Cir. 1989))). Naymik, thus, had probable cause to

believe Johnson had violated Fla. Stat. § 316.2065(7) by using his bicycle after sunset without proper lighting.

Accordingly, the district court did not err in concluding Officer Naymik had probable cause to stop and temporarily detain Johnson for violation of Fla. Stat. § 316.2065(7).

## B.    Custodial Arrest

The next question is whether Johnson's arrest was constitutional. "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment . . . ." *Virginia v. Moore*, 553 U.S. 164, 177 (2008) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)); *see also United States v. Gonzalez*, 107 F.4th 1304, 1307-08 (11th Cir. 2024).

Under Florida law, marijuana (or "cannabis") is a controlled substance, and possession of twenty grams or less of marijuana is a misdemeanor. *See* Fla. Stat. §§ 893.03(1)(c)(7), 893.13(6)(b). While Florida has legalized the possession and use of medical marijuana in some circumstances, medical marijuana must remain in its original dispensary packaging. *State v. Fortin*, 383 So. 3d 820, 824 (Fla. Dist. Ct. App. 2024). Observation of unpackaged marijuana can provide probable cause to believe an individual is illegally possessing marijuana. *See id.* (holding observation of marijuana outside medical marijuana dispensary packaging provided probable cause to search vehicle).

Johnson's open and obvious possession of a marijuana blunt provided Officer Naymik probable cause to believe Johnson was

possessing marijuana in violation of Florida law. Therefore, Naymik permissibly placed Johnson under custodial arrest.

Johnson's argument that his arrest for a bicycle infraction was constitutionally impermissible ignores that the district court found his arrest was justified by, and based on, probable cause that he illegally possessed marijuana. Johnson's arrest for marijuana possession was constitutional.

## C.    Search of Person

The next issue is the search of Johnson's person. Johnson argues that Officer Naymik lacked sufficient justification to perform a protective search of his person, also known as a *"Terry* frisk." *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). But the district court found that Naymik discovered the firearm underlying the § 922(g) charge in this case pursuant to a permissible search incident to that arrest. *See Riley v. California*, 573 U.S. 373, 382-85 (2014) (describing search incident to arrest exception to Fourth Amendment's warrant requirement). On appeal, Johnson does not attack the district court's ruling or argue that the police could not search him incident to arrest. Johnson thus has forfeited this issue by not raising it in his briefs to this Court. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680-82 (11th Cir. 2014).

Ultimately, Johnson has not shown that the stop, arrest, and search incident to arrest in this case were unconstitutional. The district court did not err by denying the motion to suppress as it relates to items discovered during the search of Johnson's person.

### IV.  MOTION TO SUPPRESS—STATEMENTS

In perfunctory fashion, Johnson argues that "because [Johnson] was not free to leave, was not informed of his *Miranda* rights, and did not waive them, law enforcement violated his Fifth Amendment's [sic] guarantee against self-incrimination." Johnson's appellate brief does not identify any specific statements that should have been excluded from evidence at trial.[1] This is reason alone to go no further. Nonetheless we discuss Johnson's statements during the traffic stop and after he was handcuffed.

### A.    *Miranda* **Warnings Generally**

The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Courts must "exclude from evidence any incriminating statements an individual makes before being warned of his rights to remain silent and to obtain counsel." *United States v. Luna-Encinas*, 603 F.3d 876, 880 (11th Cir. 2010); *see also Miranda v. Arizona*, 384 U.S. 436, 467 (1966). An individual must only be given "*Miranda* warnings," however, if he is *in custody* during questioning. *United States v. Woodson*, 30 F.4th 1295, 1303 (11th Cir. 2022) (citing *Luna-Encinas*, 603 F.3d at 880).

In the *Miranda* context, a person is in custody "when a reasonable person would have understood that his freedom of

---

[1] Although the analysis of the Fifth Amendment issue in Johnson's brief could not be called fulsome, we reject the government's suggestion that Johnson has abandoned the issue.

action was curtailed to a degree associated with formal arrest." *Id.* (internal quotation marks omitted). This inquiry proceeds in two steps, in which we ask: (1) "whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave"; and (2) "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* (internal quotation marks omitted). In assessing whether a reasonable person would have understood their freedom of movement to be curtailed in this way, "we consider the totality of the circumstances, including whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled, as well as the location and length of the detention." *Luna-Encinas*, 603 F.3d at 881 (internal quotation marks and citations omitted). We determine whether an individual was in custody objectively and ignore the subjective beliefs of the individuals involved. *Id.*

A person temporarily detained pursuant to an ordinary traffic stop is not "in custody" for *Miranda* purposes. *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Traffic stops may evolve, however, and the protections of *Miranda* must be observed "as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Id.* (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

## B.    Johnson's Traffic Stop

To begin, a reasonable person in Johnson's position would not have felt free to leave at any point during his encounter with Officer Naymik. A reasonable person knows he cannot terminate and leave a traffic stop initiated by a law enforcement officer. *See Berkemer*, 468 U.S. at 436-37; *United States v. Acosta*, 363 F.3d 1141, 1149 (11th Cir. 2004) ("A reasonable person knows that he is not free to drive away from a traffic stop until it is completed, just as a reasonable person knows that he is not free to walk away from a *Terry* stop until it is over."). That does not end our inquiry, however.

Although Johnson's inability to terminate his encounter with Officer Naymik remained constant, the coercive pressure he faced changed as the encounter progressed. Prior to being handcuffed, Johnson did not face coercive police pressure sufficient to render him "in custody" for *Miranda* purposes. Instead, the stop resembled the ordinary traffic stop or *Terry* stop, where *Miranda* warnings are generally not required for pre-arrest questioning. Naymik stopped Johnson immediately adjacent to a busy highway, visible to the passing traffic. For ten minutes, Johnson remained unrestrained, sitting calmly on his bicycle. Until the officers arrested Johnson, no force was used against Johnson, and Naymik never drew his weapon or indicated that he was arresting Johnson.

From the outset of the stop, and while Officer Naymik waited for dispatch to run Johnson's social security number, Naymik did calmly ask Johnson numerous questions. The

questions were standard-fare: "You got any guns or anything?"; "You got ID on you?"; "Anything illegal?"; "Where you headed?"; "Any warrants?"; "Anything else illegal on you?"; etc. Johnson answered the inquiries and, at other times, volunteered information. During these initial moments—the first ten minutes of the stop—the circumstances were not coercive and are insufficient to support a finding that Johnson was "in custody" such that he was entitled to receive *Miranda* warnings. Thus, until Johnson was handcuffed, his statements were not elicited, or introduced at trial, in violation of the Fifth Amendment.

The nature of the traffic stop changed, however, when officers arrested Johnson for the marijuana violation. Johnson was handcuffed and straddled by Officer Naymik and a second officer. Naymik angrily yelled at Johnson for failing to inform him of the concealed firearm. Naymik rattled off a series of questions to find out whether Johnson was a convicted felon and how he acquired the firearm. And over twenty minutes later, with Johnson handcuffed and now positioned between two police vehicles, Naymik asked a few more questions regarding Johnson's prior convictions. Now, the circumstances became sufficiently coercive to render Johnson "in custody" for *Miranda* purposes. To the extent the government introduced statements Johnson made after being handcuffed and arrested, those statements were made without any

24-14083                Opinion of the Court                18

*Miranda* warnings in violation of Johnson's Fifth Amendment rights.[2]

## C.    Harmless Error

Admission of evidence in violation of the *Miranda* rule can, in some circumstances, be harmless error. *United States v. Street*, 472 F.3d 1298, 1314 (11th Cir. 2006). The question becomes "whether, after we subtract the statements that should not have been admitted at [the defendant]'s trial, the remaining evidence is so overwhelming that we are convinced beyond a reasonable doubt that the improperly admitted evidence did not affect the verdict." *Id.* at 1315 (citing *United States v. Adams*, 1 F.3d 1566, 1576 (11th Cir. 1993)).

Johnson's sparse briefing doesn't tell us what un-Mirandized statements were impermissibly allowed to be introduced at trial. The government, however, acknowledges that, during the first phase of the trial, it introduced three of Johnson's responses to Officer Naymik's post-arrest questioning, including Johnson's statements that (1) he was a convicted felon; (2) he had bought the firearm for $200; and (3) he was convicted in 2002. The government also introduced Johnson's statement that he had made a holster for the firearm. Because overwhelming evidence supported the jury's finding that Johnson had violated 18 U.S.C.

---

[2] The government does not argue otherwise. Instead, the government argues only that introduction of any of Johnson's post-arrest statements constituted harmless error.

§ 922(g)(1), admission of Johnson's post-arrest statements in violation of *Miranda* constituted harmless error.

To secure a conviction under the felon-in-possession statute, 18 U.S.C. § 922(g)(1), the government had to prove beyond a reasonable doubt that (1) "the defendant has been convicted of a crime punishable by imprisonment for a term exceeding one year"; (2) "the defendant knowingly possessed a firearm or ammunition"; and (3) "such firearm or ammunition was in or affected interstate commerce." *United States v. Funches*, 135 F.3d 1405, 1406-07 (11th Cir. 1998). "In felon-in-possession cases after *Rehaif*, the Government must prove not only that the defendant knew he possessed a firearm, but also that *he knew he was a felon* when he possessed the firearm." *Greer v. United States*, 593 U.S. 503, 505-06 (2021) (citing *Rehaif v. United States*, 588 U.S. 225, 235-37 (2019)).

Overwhelming evidence—including Officer Naymik's testimony and body camera footage—clearly described and depicted Johnson's possession of the firearm in his waistband. For the jurisdictional element, ATF Special Agent Page opined that the revolver found on Johnson traveled in interstate and foreign commerce. And Johnson stipulated he was previously convicted of a felony. The jury also properly heard Johnson's pre-arrest statement that he had a strong-arm robbery conviction, showing he knew he was a convicted felon. *See United States v. Reed*, 941 F.3d 1018, 1022 (11th Cir. 2019) (concluding "the jury could have inferred that [the defendant] knew he was a felon from his

24-14083                Opinion of the Court                20

stipulation and from his testimony that he knew he was not supposed to have a gun" (emphasis removed)).[3]

Any error in allowing the introduction of Johnson's post-arrest statements was harmless.

### V. SUFFICIENCY OF THE EVIDENCE

Johnson does not argue that there was insufficient evidence to support the jury's finding that he committed the offenses listed in the indictment "on occasions different from one another." *See* 18 U.S.C. § 924(e); *Erlinger*, 602 U.S. at 834-35. Instead, Johnson argues only that the evidence regarding the date of commission of his first cocaine sale offense was different from the date included in the indictment, meaning "the [g]overnment failed to prove three predicate offenses." We disagree.

As Johnson points out, the state court information and the federal indictment allege that Johnson committed his first of cocaine sale offense on different dates. The state court information says Johnson committed the offense on October 21, 1998, while the federal indictment says he committed the offense on "on or about October 29, 1999."

The date discrepancies matter not because sufficient evidence showed Johnson committed his first cocaine sale on or

---

[3] We note that robbery without a weapon is a second degree felony under Florida law, punishable "by a term of imprisonment not exceeding 15 years." Fla. Stat. § 775.082(6)(d). Johnson received four years of imprisonment and five years of probation for his 2002 "strong arm robbery."

about the date alleged in the indictment. First, Johnson himself testified that he committed the first cocaine sale offense in 1999. Second, a booking sheet showed that Johnson was arrested for that offense on October 28, 1999. This evidence demonstrates that "a reasonable jury could have determined beyond a reasonable doubt" that Johnson committed the first cocaine sale offense on or about October 29, 1999. In any event, whether Johnson's first cocaine sale offense was in in 1998 or 1999, the fact remains that his first offense was committed on a different occasion from his 2000 cocaine sale and 2002 robbery offenses.

## VI.  CONCLUSION

For the foregoing reasons, we affirm (1) the district court's denial of Johnson's motion to suppress; and (2) the jury's special verdict, which rendered Johnson subject to the ACCA's fifteen-year mandatory minimum prison sentence.

**AFFIRMED.**